[Crim. No. 2775. Fourth Dist., Div. Two. Feb. 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH WILLIAM KRAMER, Defendant and Appellant.

*Assigned by the Chairman of the Judicial Council.

456

Arthur R. Seidler, Hennigan & Butterwick and J. David Hennigan for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

TAMURA, J.—Following a jury trial defendant was found guilty of abortion, his motion for a new trial was denied, proceedings were suspended and he was granted probation.[1]

[1]Probation was granted on condition that he serve 60 days in the county jail and pay a $3,000 fine.

Defendant appeals from the order granting probation and also purports to appeal from a "judgment of conviction" and an order denying new trial. A judgment of conviction not having been entered and an order denying a new trial being nonappealable in the present case, the purported appeals therefrom must be dismissed. (*People* v. *King*, 60 Cal.2d 308, 309 [32 Cal.Rptr. 825, 384 P.2d 153]; *People* v. *Jones*, 36 Cal.2d 373, 375 [224 P.2d 353].)

One of defendant's contentions on this appeal being insufficiency of the evidence to support the conviction, including a claimed absence of sufficient evidence corroborating the testimony of the prosecutrix, we shall review the evidence in some detail, viewing it, as we must, in the light most favorable to respondent.

In the latter part of 1964 and early 1965 the prosecutrix, who on the date of the alleged offense had just turned 18 and was separated from her husband, resided in Garden Grove in Orange County with one Mary Jean Stark. In early January 1965 prosecutrix missed her menstrual period so she visited Dr. Campbell in Garden Grove who referred her to a laboratory for a pregnancy test. She was informed that the result of the test was positive. Thereafter she and her roommate discussed her condition and the possibility of obtaining an abortion. Her roommate learned of defendant's name from some unknown individual in a bar in Garden Grove and conveyed the information to the prosecutrix.

Defendant is a licensed medical doctor engaged in general practice in Corona, Riverside County. Prosecutrix had had no previous contact with him.

On or about January 28 prosecutrix telephoned defendant, told him that she was pregnant and did not want to carry the child. Defendant declined to discuss the matter on the telephone but made an appointment to see her at his office on a Friday night at 8 p.m.

On the appointed night prosecutrix arrived at defendant's office between 7:30 and 8:30 p.m. Defendant asked if she were sure she was pregnant. She told him, "Yes," that she had just had a laboratory test which proved positive. When he inquired about the duration of her pregnancy, indicating that if she were more than two months along he would not "touch" her, she told him that she was not more than a month and a half along. He replied, "Fine," told her the fee would be $200 which she should bring in cash and, without a prior examination, wrote out two prescriptions—one for Dar-

von, a pain killer and one for Lincocen, an antibiotic—directing her to have them filled and to bring them back on her next visit. He then made an appointment for her for the following Monday evening at 8 p.m., telling her to come to the back door of the office.

On the following Monday evening prosecutrix' roommate drove her to defendant's office arriving at about 8 p.m. The prosecutrix knocked at the backdoor of the office and receiving no answer went to a nearby phone booth where she called defendant's office and was informed by an answering service that he had just left for the office. Shortly, defendant appeared at the back door of the office and upon observing prosecutrix' roommate, told the latter that she must wait outside for 30-45 minutes until he was finished. Prosecutrix entered the office and defendant asked for and she paid him $200 in cash. He then explained how she should take the two prescriptions which she had had filled, led her to a small room, instructed her to undress, handed her a white gown to put on and left. When he returned, he washed his hands, placed her on a table with newspapers under her and gave her two injections in the hip. He then took a long instrument which was curved at the end and used it to wash her vagina with a red solution. Thereafter he inserted the instrument inside her vagina and after about an hour helped her off the table.

She dressed and went into his office. There he wrote and handed her a prescription for ergotrate made out for a Jean Allen of 1078 West 9th Street in Corona, telling her that he was using an alias name and address and that she was to get the prescription filled in Corona rather than Garden Grove where questions might be asked. She then went outside, met her roommate, got into the automobile, and was driven to a drugstore in Corona where her roommate had the prescription filled.

The prosecutrix bled for approximately two weeks. She called defendant who arranged an evening appointment and again told her to come to the back door. At the appointed time defendant examined her and gave her some pills ''to build up her blood.'' Thereafter the hemorrhaging ceased.

On March 3, 1965, the prosecutrix accompanied a friend who had an appointment with a Dr. Holmes in Burbank and while in the latter's office fainted. She complained of having been ill for about two weeks. Dr. Holmes examined her, found that she had abdominal pains, decreased respiration of the

right lower lung, and a slight elevation of temperature. He conducted a pelvic examination and when he inserted a speculum, it caused her extreme pain. Dr. Holmes treated her with penicillin and when after two or three days she failed to respond, directed her to the Los Angeles County Hospital. While she was in the hospital she was contacted by law enforcement officers.

Medical experts testified to the customary medical practice in the community, the possibility of performing an abortion in a physician's office, and the effect of the various drugs prescribed by defendant for prosecutrix. Taking the evidence most favorable to the prosecution, the testimony shows that it was not customary practice in the community to arrange evening appointments for patients with female disorders or to examine them without having a nurse or a member of the patient's family present; the drug ergotrate is commonly associated with an abortion because it contracts the uterus, reduces bleeding and forces out any product of conception not removed by curettement; most germicidal solutions are red in color; the washing of the vagina with such a solution is consistent with an abortion and inconsistent with a normal pelvic examination or the taking of a Pap smear; though not the normal procedure, a local anesthetic could be used for such an operation and would allow the patient to walk immediately following the operation; and the events testified to by the prosecutrix were consistent with the performance of an abortion.

Defendant conceded that a therapeutic abortion was not indicated.

Defense testimony from doctors revealed that the prosecutrix had a history of recurrent pelvic infections and had been receiving treatments for that condition over a considerable period of time both before and after her visit to defendant.

Between March 1964 and January 1965 she was under the care of a Dr. Vietz. She last saw him on January 19, 1965, when she complained of missing her menstrual period. He testified that he examined her and found nothing which would have indicated pregnancy beyond six weeks, but made an appointment for her for January 27 because she felt that she was pregnant. Dr. Vietz admitted that his finding on January 19 was consistent with a laboratory finding on January 26 that she was pregnant.

Dr. Carter testified that he examined prosecutrix on May

13, 1965. She told him that she was pregnant, had had her last period on March 27, and had had two miscarriages, but she made no mention of an abortion. He further testified that when he saw her on July 7, 1965, she complained of a peculiar feeling in her heart, cramps in her abdomen, and of gaining weight; that on July 13 she reported that she was bleeding; and that on her July 21 visit he determined that she had miscarried.

Dr. Lansing, a specialist in obstetrics and gynecology, testified that it would not be normal for a 17 or 18 year old woman to have a normal menstrual flow a week following termination of pregnancy. In his opinion, the fact that a woman of prosecutrix' age with an irregular menstrual history was several days late in her current period would be very slight evidence of pregnancy.

Mrs. Shirley Allen, one of defendant's patients, testified that on the evening of February 1, 1965, the date of the alleged offense, she complained to defendant by telephone that she had begun to hemorrhage and he told her that he would leave her a prescription but that she did not bother to pick it up because her condition had improved by morning. She testified that he sometimes jokingly referred to her as ''Calamity Jane'' but that she never resided at 1078 West 9th Street, Corona, the address shown on the prescription made out to Jean Allen which defendant handed the prosecutrix.

Defendant's receptionist testified that he frequently worked at night; that she had never seen a speculum, dilator, probe, curette, etc., in the office; that in writing out prescriptions defendant often made mistakes in the name of the patient and that she had to make corrections.

Defendant testified in substance as follows: When prosecutrix called him she stated she was 10 days past her period and wanted to find out if she was pregnant. On her first visit he thought that she was merely late and, hence, did not conduct a physical examination. He merely gave her injections of prostigmin and estrone which have no effect on pregnancy, gave her prescriptions for Darvon and Lincocen—Darvon because she complained of cramps and Lincocen because she had a cold—and gave her an appointment for the following evening. On the next visit he observed another person in the car. He invited her to come in the office and wait but she said she preferred to remain in the car. Prosecutrix appeared to be nervous so he gave her an injection of a tranquilizer, had her undress and put on a gown, placed her on a table, employed a

speculum to examine her vagina, and, with an instrument commonly used for Pap smears took a specimen from the cervix to make a slide. He testified he gave her a prescription for norlestrin which would cause bleeding only if she was not pregnant but would not induce a miscarriage. It was his opinion that she was not pregnant.

Defendant denied that prosecutrix told him of the laboratory test confirming her pregnancy; denied prescribing the drug ergotrate stating that it was intended for a Mrs. Allen and that prosecutrix must have mistakenly picked up the wrong prescription from his desk; and denied ever possessing the type of dilators or curette needed for performing a curettage. He admitted discussing a $200 fee but explained that he told prosecutrix that if she were pregnant the fee would be $200 for prenatal care and delivery, but if not, she would be billed for the examination and injections. The prosecutrix testified that defendant never billed her for his services.

Defendant seeks a reversal on the following grounds: (1) insufficiency of the evidence to support the verdict; (2) error in admitting the laboratory report in evidence; (3) failure to give certain proferred instructions, and (4) prejudicial misconduct by the prosecutor.

There was substantial evidence to corroborate the testimony of the prosecutrix and to support the verdict.

On appeal, the existence of every fact the jury could have reasonably deduced from the evidence is assumed in favor of the verdict. (See *People* v. *Robillard*, 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Huizenga*, 34 Cal.2d 669, 676 [213 P.2d 710].) The test is whether there is substantial evidence to support the verdict. (See *People* v. *Saterfield*, 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266]; *People* v. *Hillery*, 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Reinard*, 220 Cal.App. 2d 720, 725 [33 Cal.Rptr. 908].) A judgment supported by the testimony of witnesses who have not been discredited and whose testimony is not inherently improbable will be affirmed. (*People* v. *Reinard, supra*, p. 730; *People* v. *Swanson*, 204 Cal.App.2d 169, 172 [22 Cal.Rptr. 178]; *People* v. *Johnson*, 187 Cal.App.2d 116, 121-122 [9 Cal.Rptr. 571]; *People* v. *Gunn*, 170 Cal.App.2d 234, 238 [338 P.2d 592].)

The elements constituting the crime of abortion are: (1) An attempt to produce miscarriage by supplying or administering any medicine, drug or substance or by using any instrument or other means; (2) a specific intent to induce

miscarriage based on defendant's knowledge or belief of pregnancy; and (3) the lack of necessity for a therapeutic abortion. (*People* v. *Reinard, supra,* 220 Cal.App.2d 720, 728; 1 Witkin (1963) Cal. Crimes, p. 519.) Proof of actual pregnancy and a completed miscarriage are not necessary elements of the offense. (*People* v. *Gallardo,* 41 Cal.2d 57, 68 [257 P.2d 29]; *People* v. *Reinard, supra,* 220 Cal.App.2d 720, 728; *People* v. *Pollum,* 97 Cal.App.2d 173, 177 [217 P.2d 463]; 1 Witkin, Cal. Crimes, *supra,* p. 523.)

 While the testimony of the abortee must be corroborated by other evidence (Pen. Code, § 1108), the same test which has been evolved for determining the sufficiency of corroborating evidence of an accomplice (Pen. Code, § 1111) governs in an abortion case. (*People* v. *MacEwing,* 45 Cal.2d 218, 224 [288 P.2d 257]). And since an abortee is not an accomplice of the person charged with producing the miscarriage, her testimony may be corroborated by the testimony of a witness who was an accomplice and the testimony of the accomplice may be corroborated by the testimony of the abortee. (*People* v. *Gallardo, supra,* p. 63; *People* v. *Wilson,* 25 Cal.2d 341, 346 [153 P.2d 720]; *People* v. *Clapp,* 24 Cal.2d 835, 839-840 [151 P.2d 237]; *People* v. *Bawden,* 208 Cal.App. 2d 589, 596 [25 Cal.Rptr. 368].) Moreover, corroborating testimony may consist of testimony of the defendant and inferences therefrom as well as inferences from the circumstances surrounding the entire transaction. (*People* v. *Wilson, supra,* p. 347; *People* v. *Reinard, supra,* 220 Cal.App.2d 720, 728-729.)

 Corroboration is sufficient in an abortion case if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the woman is telling the truth. (*People* v. *Gallardo, supra,* 41 Cal.2d 57, 62; *People* v. *Malone,* 82 Cal.App.2d 54, 61 [185 P.2d 870]; *People* v. *Lorraine,* 28 Cal.App.2d 50, 53 [81 P.2d 1004]; *People* v. *Lee,* 81 Cal.App. 49, 53 [252 P. 763]; see *People* v. *Miner,* 96 Cal.App.2d 43, 49-50 [214 P.2d 557].) The corroborative evidence need not by itself establish that the crime was committed or show all the elements thereof, but it must relate to some act or fact which is an element of the offense. (See *People* v. *Gallardo, supra,* p. 63; *People* v. *Yeager,* 194 Cal. 452, 473 [229 P. 40]; *People* v. *Robbins,* 171 Cal. 466, 469-471 [154 P. 317]; *People* v. *Josselyn,* 39 Cal. 393, 400-401.) It must create more than a suspicion, but is sufficient even though slight and entitled to but little con-

sideration when standing by itself. (See *People* v. *Weiss*, 50 Cal.2d 535, 567 [327 P.2d 527]; *People* v. *Gallardo, supra*, 41 Cal.2d 57, 63; *People* v. *Wilson, supra*, 25 Cal.2d 341, 347; *People* v. *Kempley*, 205 Cal. 441, 455-456 [271 P. 478]; *People* v. *Bawden, supra*, 208 Cal.App.2d 589, 596.)

In the present case there was substantial corroborating evidence. The prosecutrix' roommate testified that she discussed with prosecutrix the result of the laboratory test and the possibility of securing an abortion; that she attempted to find the name of a doctor and ultimately obtained defendant's name from an unknown person at a bar in Garden Grove; that she drove prosecutrix to defendant's office in Corona; that when they arrived at the doctor's office she was not permitted to enter but was told to wait outside for 30-45 minutes until defendant was finished; that when prosecutrix emerged from defendant's office and entered the automobile, she looked like she "came out of some kind of anesthetic, she looked like she was doped up or something"; and that when she went to the drugstore in Corona to have a prescription filled which prosecutrix handed to her, she noted that it was not made out to prosecutrix but to one "Jean Allen" at an address in Corona. No one by the name of Jean Allen ever resided at the address shown on the prescription. The records of Snyder Laboratory showed that the result of the test performed on prosecutrix just prior to the date of the alleged offense was positive; it corroborated prosecutrix' testimony that she told defendant that she was pregnant and informed him of the test. The parties further stipulated that Dr. Campbell whom prosecutrix visited in January 1965 would have testified that he obtained a positive result from a pregnancy serum test performed on her. There was substantial medical testimony that the drugs Darvon, Lincocen, and ergotrate are commonly associated with an abortion and that the prescription for ergotrate is indicative of an abortion because it reduces bleeding and forces out any product of conception not removed by curettement. The foregoing evidence together with the testimony of defendant and inferences therefrom as well as the inferences from the circumstances surrounding the commission of the offense constituted sufficient corroboration. (*People* v. *Wilson, supra*, 25 Cal.2d 341, 347; *People* v. *Reinard, supra*, 220 Cal.App.2d 720, 728-729.)

Defendant contends that where the corroborating evidence is consistent with defendant's innocence, it is insufficient as a matter of law. While some of the earlier cases so

indicated, recent cases hold that the question whether corroborating evidence is as compatible with innocence as it is with guilt is a matter to be considered by the jury. (*People* v. *Gallardo, supra,* 41 Cal.2d 57, 63; Witkin, Cal. Evidence (2d ed. 1966) 1038.)

Defendant contends that there was no evidence to show that an instrument was used to induce miscarriage. It is true that the prosecutrix did not testify that she felt any scraping or pulling or suffered any pain, but from all of the evidence it may be reasonably inferred that a miscarriage was induced by the use of an instrument. The evidence showed the prosecutrix was in fact pregnant when she visited defendant; she described the procedure followed by defendant which included the use of an instrument; she was on the table for almost an hour; during the visit prosecutrix' roommate was not permitted to remain in defendant's office; there was substantial medical testimony that the procedure described by the prosecutrix and the drugs prescribed by defendant were consistent with the performance of a curettage in a doctor's office; the prosecutrix bled intermittently for about two weeks following her visit to defendant; and there was no suggestion that any of the drugs prescribed by defendant would induce a miscarriage. It may be reasonably inferred from the foregoing evidence that a miscarriage was induced by the use of an instrument or instruments.

The cases to which defendant has invited our attention are materially distinguishable.

In *People* v. *MacEwing, supra,* 45 Cal.2d 218, an abortion conviction was reversed because the trial court erroneously instructed the jury that corroboration is sufficient if it tends to connect the defendant with the crime "*or*" if it satisfies the jury that the prosecutrix is telling the truth. In *People* v. *Murphy,* 60 Cal.App.2d 762 [141 P.2d 755], there was no evidence corroborating the abortee's testimony other than the testimony of the doctor's nurse who was a codefendant. In *People* v. *Tatge,* 219 Cal.App.2d 430 [33 Cal.Rptr. 323], the prosecutrix testified that when she visited defendant she had not missed her period, was not late and that she never discussed abortion with the defendant. The only evidence indicating an abortion was the payment of a $375 fee which, while creating a suspicion, did not constitute sufficient corroboration. In *People* v. *Jordan, supra,* 226 Cal.App.2d 7 [37 Cal. Rptr. 738], the only corroborating evidence was a cab-driver's testimony that he transported defendant to the prosecutrix'

home and about 45 minutes later picked him up. In *People* v. *Abarbanel*, 239 Cal.App.2d 31 [48 Cal.Rptr. 336], the conviction was reversed because the uncontroverted evidence established the fact that defendant relied upon psychiatric reports that abortion was necessary to preserve the life of the abortee. In *People* v. *Ballard*, 167 Cal.App.2d 803 [335 P.2d 204], the judgment of conviction was reversed because the prosecution failed to sustain its burden of showing that defendant's act was not necessary to preserve the life of the woman. The undisputed evidence was that all defendant did was to remove the remnants of conception. In the second *Ballard* case, *People* v. *Ballard*, 218 Cal.App.2d 295 [32 Cal.Rptr. 233], the abortee testified that she was not pregnant and that she had had a miscarriage before she consulted defendant. In *People* v. *Feigin*, 174 Cal.App.2d 553 [345 P.2d 273], the abortee who did not speak or understand English was taken to the defendant by a male companion who testified to an arrangement with defendant for an abortion. However, abortee testified that she did not overhear the alleged conversation pertaining to the arrangements and that she did not go to defendant for an abortion.

We conclude that in the case under review the evidence was sufficient to support the verdict.

■ Defendant's contention that the trial court erred in admitting the laboratory report into evidence is without merit. He argues that the report was irrelevant because there was no evidence that it was ever delivered to him. The evidence was admissible to corroborate the prosecutrix' testimony that she had called the laboratory and was informed that the test was positive and her testimony that she told the defendant of the test on her first visit to him.

■ Defendant contends that the court erred in failing to give certain offered instructions which related to judicial comment on the evidence, failure to produce available evidence, inferences in questions propounded to witnesses, accomplice's testimony, corpus delicti, and corroboration.

We have carefully reviewed the instructions given by the court and conclude that all of the issues were adequately covered by them. We find nothing in the record to support an instruction on judicial comment or failure of the prosecution to produce available evidence. ■ Defendant's contention that the court should have given his requested instruction that the prosecutrix' roommate was an accomplice as a matter

of law is without merit. One who accompanies the victim to an abortionist's office, though aware of the purpose of the visit, is not an accomplice as a matter of law. (*People* v. *Davis,* 43 Cal.2d 661, 673 [276 P.2d 801]; *People* v. *Wilson, supra,* 25 Cal.2d 341, 346.) The instructions given by the court fully and fairly covered all of the other issues covered by defendant's proposed instructions.

We next consider defendant's contention that the deputy district attorney committed prejudicial misconduct in asking improper questions in cross-examining defendant's character witnesses.

Defendant called seven character witnesses—two doctors, the president of a medical school, a lawyer, dentist, pharmacist, and a minister—who testified to his reputation in the Corona area as an ethical medical practitioner. On cross-examination the prosecutor asked some of the witnesses whether they had heard purported reports circulating in Orange County, among students at University of California at Riverside, among frequenters of bars in Riverside, among nurses in Riverside, or among the Mexican-American community in Riverside that defendant was the one to see for an abortion.

A defendant in a criminal case is entitled to call character witnesses to testify to his reputation respecting the relevant character trait involved in the offense charged. (Witkin, Cal. Evidence (2d ed. 1966), § 1214, p. 1121; Evid. Code, §§ 1102-1103.) When he does, however, he exposes himself to the calculated risk of having the witnesses subjected on cross-examination to questions respecting reports or rumors of his conduct inconsistent with his reputation as testified to by the witnesses. (*People* v. *Eli,* 66 Cal.2d 63, 78 [56 Cal.Rptr. 916, 424 P.2d 356]; see McCormick, Handbook of the Law of Evidence (1954) pp. 336-338.) To obviate the danger that the prosecutor may take unfair advantage of such exposure, the cross-examiner must be required to show that the questions are asked in good faith. It is the responsibility of the trial judge to see that the good faith requirement is observed. "This may best be done," said the Supreme Court recently in *People* v. *Eli, supra,* 66 Cal.2d 63, 79, "by first ascertaining *outside the presence of the jury,* 'that the target of the question was an actual event, which would probably result in some comment among acquaintances if not injury to defendant's reputation.' " ". . . One of the dangers sought to be minimized by *Eli* was that of the question, based upon paucity or a total lack of factual support, which is asked with

little or no hope of affirmative response and with the basic purpose of creating through innuendo that which cannot be established by proof.'' (*People* v. *Gonzales*, 66 Cal.2d 482, 502 [58 Cal.Rptr. 361, 426 P.2d 929].)

 Defendant contends that the questions propounded by the prosecutor in the present case pertaining to defendant's reputation in geographic areas beyond the limits of Corona where he maintained his office, and particularly in Orange County, were improper. However, defendant testified that his practice included Orange County and that his patients were drawn from that county as well as Riverside, San Bernardino and Los Angeles counties. The character trait put in issue by defendant being his reputation as an ethical medical practitioner, it would be illogical to hold that his professional reputation in areas from which he drew his patients is irrelevant and that the inquiry must be limited to the city in which he maintained his office. (*People* v. *Cobb*, 45 Cal.2d 158, 163-164 [287 P.2d 752].) Defendant could not restrict cross-examination by limiting his direct examination to defendant's professional reputation in only a portion of the area in which he practiced.

 Defendant complains that the questions relating to purported reports circulating among particular segments of the community in which he practiced were improper.

The record discloses that after several witnesses had been cross-examined, during which some of the questions of which defendant now complains were asked without objections or motions to strike, the court required the deputy district attorney, outside the presence of the jury, to show good faith. The prosecutor told the court that he had talked to students attending the University of California at Riverside, two pharmacists, the chief narcotic officer in Riverside, and to a ''reliable source'' who had talked to a nurse in a Riverside hospital. Considerable discretion must necessarily be vested in the trial judge in determining whether good faith has been shown. In the present case we cannot say that the judge abused his discretion in impliedly finding that a sufficient showing had been made that the purported reports were in fact circulating within the various segments of the community referred to by the prosecutor.

 However, good faith requires, in addition to factual support for the matters inferred in the question, that the question be asked in anticipation of an affirmative response and not simply for the purpose of getting an innuendo before the

jury. (*People* v. *Gonzales, supra,* 66 Cal.2d 482, 502.) While questions pertaining to defendant's reputation in a particular segment of the community may be proper on cross-examination of character witnesses where, as here, the trait involved is the professional reputation of a doctor as an ethical general medical practitioner, good faith requires a preliminary showing that the witness has acquaintances among or contacts with the particular segment either through foundational questions to the witness or by other good faith showing outside the presence of the jury which would satisfy the judge that there is a reasonable basis for anticipating an affirmative response from the witness that he has heard such reports.

The record in the present case discloses that some of the questions pertaining to the reports among certain segments of the community where defendant practiced were asked without objection or motions to strike. As to those questions, defendant may not raise the issue of good faith for the first time on appeal. (*People* v. *Cummings,* 141 Cal.App.2d 193, 200 [296 P.2d 610] [overruled on other grounds]; cf. *People* v. *White,* 43 Cal.2d 740, 744 [278 P.2d 9].)

In instances when objections were interposed, the record shows that the witnesses, a dentist and an attorney, testified that they did have professional contacts with persons in the group mentioned in the question.

In the foregoing circumstances the asking of the questions relating to reports among particular segments of the community in which defendant practiced did not constitute misconduct.

Defendant also complains that the prosecutor committed prejudicial misconduct in asking certain witnesses whether they had heard that defendant had been under investigation by law enforcement agencies.

With respect to questions pertaining to investigations by the state medical board, defendant opened up the subject by asking a witness on direct examination whether he had read newspaper accounts of such investigation and whether it affected his opinion as to defendant's reputation. He may not, therefore, attribute the prosecutor's questions whether the witnesses heard such reports to bad faith.

In a different category were the questions asked by the prosecutor of certain witnesses whether they had heard that the Palm Springs or Riverside vice squad had been investigating the defendant. The questions were improper. Such investigations, unless given newspaper publicity, would hardly be a matter of general public knowledge or comment. However, the

record shows that the court sustained objections to such questions and, out of the presence of the jury, admonished the prosecutor that unless he were prepared to call the vice squad officers as witnesses such questions would not be permitted. Although, despite the court's ruling, the mere asking of the improper questions may have constituted misconduct, defendant failed to make a motion to strike the questions or to request the court to admonish the jury to disregard any inferences contained in them. Having failed to take appropriate steps to eliminate any adverse effect the questions may have had, he may not complain for the first time on appeal that the propounding of the questions constituted prejudicial misconduct. (See *People* v. *Campbell,* 232 Cal.App.2d 712, 715 [43 Cal.Rptr. 71]; *People* v. *Swayze,* 220 Cal.App.2d 476, 495 [34 Cal.Rptr. 5]; *People* v. *Romano,* 197 Cal.App.2d 622, 639 [17 Cal.Rptr. 399]; *People* v. *Warren,* 175 Cal.App.2d 233, 241 [346 P.2d 64].)

We have reviewed the entire record, including the evidence, and it is our opinion that there is no reasonable probability that errors, if any, which occurred during the cross-examination of defendant's character witnesses constituted prejudicial misconduct requiring reversal. (*People* v. *Watson,* 46 Cal.2d 818, 834-837 [299 P.2d 243].)

Defendant also contends that the prosecutor was guilty of prejudicial misconduct in making certain remarks during his argument to the jury. The record fails to disclose any objections, motions to strike, or requests for admonition to the jury. Unless the comments were so flagrant that an admonition to the jury could not have eliminated the harmful effect of the remarks, defendant must have first called the matter to the attention of the trial court for an appropriate ruling and request for admonition before the matter can be considered on appeal. (*People* v. *Berryman,* 6 Cal.2d 331, 337 [57 P.2d 136]; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].) The remarks of which defendant complains were not so flagrant that a proper admonition could not have eliminated any harmful effect they may have had on the jury.

Purported appeals from the ''judgment of conviction'' and order denying new trial are dismissed.

The order granting probation is affirmed.

McCabe, P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied March 14, 1968, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1968.