[Crim. No. 23752. First Dist., Div. Five. Nov. 14, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED HEMPSTEAD, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Harriet Wiss Hirsch and Deborah Long, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Richard G. Tullis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KING, J.—Fred Hempstead appeals from a judgment of conviction for second degree murder (Pen. Code, § 187) with a firearm (Pen. Code, § 12022.5) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). We affirm the conviction.

On July 14, 1980, Hempstead shot Kenneth Pickett and Pickett's brother, Eugene Henderson, in the home in which they all lived. Pickett died; Henderson was wounded in his right thigh.

Hempstead's defense at trial was that the shooting was accidental: he was putting the gun away when Pickett hit his hand and caused the gun to fire; Henderson grabbed his hand and the gun accidentally discharged again; the gun fired a third time when Hempstead tried to empty it. The prosecution's evidence supported the jury's verdict.

Hempstead intended to call eight witnesses who would give opinion testimony as to Hempstead's good character based on their contact with him during the previous five to fifteen years. During trial he moved *in limine* to preclude the prosecutor from cross-examining the witnesses about prior acts of misconduct by Hempstead. The acts consisted of an unprosecuted 1974 battery and an unprosecuted 1973 assault with a deadly weapon and kidnaping, all involving the same victim, who was deceased at the time of trial. The prosecutor believed in good faith that the acts had occurred. Hempstead's counsel represented that none of the character witnesses had heard about either incident, and offered to introduce testimony to this effect outside the presence of the jury. He argued that because of this representation, the prosecutor could not be permitted to ask the witnesses whether they had heard of the prior acts, citing *People* v. *Kramer* (1968) 259 Cal.App.2d 452 [66 Cal.Rptr. 638]. The decision in *Kramer* requires, as a prerequisite to cross-examination of reputation witnesses regarding the defendant's prior misconduct, that the prosecutor have a good faith belief that the prior acts actually occurred *and* that the questions will be asked in anticipation of an affirmative response.

The court ruled that the cross-examination would be permitted because the requirement in *Kramer* of anticipation of an affirmative response applies only to reputation testimony, and not to opinion testimony, since an opinion

witness' negative response shows "some lack of information on which he based his opinion, and it does undermine his opinion." Because of the court's ruling counsel chose not to call the character witnesses. Hempstead contends that his representation that the prospective witnesses had not heard about the prior acts compelled a contrary ruling.

■ When a criminal defendant presents opinion or reputation evidence on his own behalf the prosecutor may present like evidence to rebut the defendant's evidence and show a likelihood of guilt. (Evid. Code, § 1102, subd. (b).) Courts, however, have imposed safeguards to cross-examination of defense reputation witnesses, to prevent prosecutorial abuse of this rule. The Supreme Court held in *People* v. *Eli* (1967) 66 Cal.2d 63, 79 [56 Cal.Rptr. 916, 424 P.2d 356], cert. den., 389 U.S. 888 [19 L.Ed.2d 188, 88 S.Ct. 136], that the trial court must exercise its discretion to prevent cross-examination of defense reputation witnesses "based upon mere fantasy" by first ascertaining outside the presence of the jury that the subject of cross-examination was an event that actually occurred. The court subsequently explained in *People* v. *Gonzales* (1967) 66 Cal.2d 482, 502 [58 Cal.Rptr. 361, 426 P.2d 929], that "One of the dangers sought to be minimized by *Eli* was that of the question, based upon a paucity or a total lack of factual support, which is asked with little or no hope of affirmative response and with the basic purpose of creating through innuendo that which cannot be established by proof."

The rule set forth in *Eli* and *Gonzales* was expanded in *People* v. *Kramer, supra,* 259 Cal.App.2d at pages 466-468 [66 Cal.Rptr. 638]. The *Kramer* court characterized the *Eli-Gonzales* rule as one requiring the prosecutor "to show that the questions are asked in good faith" (*id.*, at p. 466), and held that "good faith requires, in *addition* to factual support for the matters inferred in the question, *that the question be asked in anticipation of an affirmative response* and not simply for the purpose of getting an innuendo before the jury." (*Id.*, at pp. 467-468 [italics added], citing *People* v. *Gonzales, supra,* 66 Cal.2d at p. 502.) The court relied on *Gonzales,* even though *Gonzales* did not prescribe any *requirement* of anticipation of an affirmative response, but simply referred to the absence of such anticipation as a corollary of an absence of factual support. (66 Cal.2d at p. 502.)

The *Eli, Gonzales,* and *Kramer* cases involved *reputation* testimony, whereas the evidence in the present case was limited to *opinion* testimony. This distinction has some significance in the present context, but the same danger—that of showing prior misconduct by innuendo rather than by proof—is present in both situations.

■ However, in *People* v. *Hurd* (1970) 5 Cal.App.3d 865 [85 Cal.Rptr. 718], the court explained why evidence of prior misconduct may nevertheless be relevant for purposes of cross-examination as to opinion testimony:

"The rationale for permitting the prosecution to cross-examine a defendant's good-character witness as to whether or not he has heard rumors or reports of defendant's arrest or conviction of other offenses inconsistent with the character trait testified to, is that such cross-examination tests and exposes weaknesses in the witness' knowledge of the reputation. [Citations.] Defendant argues that that rationale does not apply where, as here, the good-character witness does not testify to defendant's reputation but states his opinion of defendant's character. Although defendant's argument is not without some logic, we cannot agree with his conclusion that it was error to permit the cross-examination of Father Hiss [the defendant's good-character witness] in the 'have you heard' form.

"Obviously, the opinion of a good-character witness must have some basis, and the prosecution must be permitted to test that basis and bring into question the validity of the opinion. [Citation.] In many instances, the opinion of a personal acquaintance will necessarily be based upon a mixture of personal knowledge or observation of the defendant and a knowledge of his reputation in the community. Just so, in the case at bench, the foundation for Father Hiss' opinion was his personal acquaintance with defendant and his having met other people who knew defendant. Under these circumstances, it would not seem inappropriate that the prosecution be permitted to test the witness' knowledge, including his knowledge or lack of knowledge of well founded rumors of defendant's misconduct inconsistent with the character traits to which he testified." (*Id.*, at pp. 879-880.)

When, as here, a witness is called to express an opinion as to the good character of the defendant, the prosecution must have the opportunity to let the jury test the validity of the opinion or the weight to be given to it by asking whether the holder of the opinion has knowledge of events or acts which have indisputably occurred. If allowing these questions and answers would create a substantial danger of undue prejudice to the defendant, the trial judge has the discretion to preclude them under Evidence Code section 352. When such cross-examination of a good-character witness is permitted, the jury should be instructed that such questions and answers of a character witness are to be considered only for the purpose of determining the weight to be given to the opinion or testimony of the witness. (See CALJIC No. 2.42.)

For these reasons, the trial court's ruling permitting cross-examination of Hempstead's good-character witnesses as to the prior acts was correct even if such witnesses had absolutely no knowledge of them.

Hempstead also argues that the court should have granted the motion because the prior acts were so remote in time that their probative value

was outweighed by their prejudicial effect. (Evid. Code, § 352; see, e.g., *People* v. *Gonzales, supra,* 66 Cal.2d at p. 500 [seven-year-old evidence of victim's reputation for violence held too remote].) The court could properly have found Hempstead's alleged prior misconduct not to have been too remote in light of counsel's representation that some of the character witnesses' testimony would be based on their contact with him *prior* to the acts in question. But whether the court *did* so find is not disclosed in the record: the court made no reference to the Evidence Code section 352 issue. ■ Hempstead correctly asserts this procedural omission as error: on a motion invoking section 352, "the record must affirmatively show that the trial court did, in fact, weigh prejudice against probative value," in order to furnish the appellate court with a record enabling review of any claim of abuse of discretion. (*People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468].) The record is silent on this point.[1]

■ The section 352 error was not prejudicial. Hempstead was denied no constitutional right; he freely chose not to present witnesses after it became evident that their appearance would result in unfavorable information being brought before the jury. Accordingly, the test set forth in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], is applicable: the judgment may be reversed only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (Cf. *People* v. *Barrick* (1982) 33 Cal.3d 115, 130 [187 Cal.Rptr. 716, 654 P.2d 1243].)

There is no such reasonable probability here. "The probative value of personal opinion or reputation evidence of a defendant's good character traits to prove that he did *not* commit a charged crime or to support his credibility as a witness is slight at best." (*People* v. *Pic'l* (1981) 114 Cal.App.3d 824, 892 [171 Cal.Rptr. 106] (italics in original).) In contrast, the case against Hempstead was very strong. His claim that the gun accidentally discharged when Pickett hit his hand was highly improbable in light of (1) ballistics testimony that the first bullet could not have been fired until the hammer of the gun was cocked and the trigger then pulled, and that the gun did not have a "hair trigger," and (2) the fact that Pickett was shot in the back. Hempstead's other claims were either inconsistent with the facts or were contradicted by the testimony of eyewitnesses. In view of the slight probative value of the withheld character evidence as compared with the

---

[1]It should be noted in the trial court's defense that the primary focus of defense counsel's motion was the *Kramer* issue and not Evidence Code section 352. In thirteen pages of transcript the only reference to the section 352 issue was defense counsel's statement that "Since my client has led an otherwise blameless life for the incidents inquired about are too old and would have more prejudicial effect than probative value . . . ." (Compare *People* v. *Green, supra,* 27 Cal.3d at p. 24 [§ 352 issue argued "at some length"].)

strength of the case against Hempstead, it is not reasonably probable that a result more favorable to him would have been reached had the opinion testimony been presented without cross-examination as to prior misconduct.

■ Hempstead also contends that the trial court erred when it instructed the jury in the language of CALJIC No. 2.21 to distrust the testimony of a witness who was willfully false in a material part of his or her testimony.[2] He argues that the instruction lacked any evidentiary basis, and that in any event it should not be permitted in California. ■ The People argue that he waived any error by failing to object to the instruction at trial, but in a criminal case an appellate court may review the giving of an instruction despite the absence of an objection below if the substantial rights of the defendant were affected. (Pen. Code, § 1259; *People* v. *Satchell* (1971) 6 Cal.3d 28, 33 fn. 10 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383].)

■ The court did not err. CALJIC No. 2.21 has been upheld as a correct statement of the law. (*People* v. *Williams* (1975) 51 Cal.App.3d 65, 67-68 [123 Cal.Rptr. 891]; *People* v. *Blankenship* (1959) 171 Cal.App.2d 66, 83-84 [340 P.2d 282]; see *People* v. *Lescallett* (1981) 123 Cal.App.3d 487, 492-493 [176 Cal.Rptr. 687].) The instruction had an ample evidentiary basis: for example, the jury could have found material falsity in the testimony of either Hempstead or the eyewitnesses, in light of their conflicting testimony as to the sequence of the gun's firing.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied December 7, 1983, and appellant's petition for a hearing by the Supreme Court was denied February 2, 1984.

---

[2]CALJIC No. 2.21 states: "A witness willfully false in one material part of his testimony is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you shall believe the probability of truth favors his testimony in other particulars.

"However, discrepancies in a witness' testimony or between his testimony and that of others, if there were any, do not necessarily mean that the witness should be discredited. Failure of recollection is not uncommon. It is a fact, also, that two persons witnessing an incident or a transaction often will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance."