[No. B024327. Second Dist., Div. Seven. Dec. 17, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DEAN FRANKLIN PLAGER, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Monica Knox, Acting State Public Defender, and Sandra L. Goldsmith, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Donald E. DeNicola and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, P. J.**—A jury found defendant guilty of attempted robbery. Subsequently he admitted two prior serious felony (residential burglary) convictions. He appeals from the judgment.

### FACTS

At 9 p.m. Nellie Lira and Linda Lucero were doing their laundry in a laundromat when defendant entered, examined a row of washing machines

and left; a minute later he returned, approached Lira from behind and pulled back her hair. As Lira began to scream, he put a knife to her throat and his other hand over her mouth; she felt the point of the knife sticking in her neck and was very frightened; his hand was calloused and smelled of cigarette smoke. Defendant demanded her money and, as she reached into her back pocket for her change, Lucero, who had been watching defendant, walked forward and said she had $10; he ordered her not to come any closer or move; at the sound of a door opening in the bar next door, defendant released Lira and fled.

At the laundromat Deputy Digby took a report from the two women; he received a description of a white male between 25 and 30 years of age, approximately 5 feet 10 inches tall, thin, of dirty appearance and smelling of cigarette smoke. A week later he apprehended defendant who matched that description, and arranged for an in-field showup to which Lira and Lucero were taken. Lira told police defendant looked like the man in the laundromat, and testified there was no question in her mind about her identification. Lucero also positively identified defendant as the man who tried to rob Lira; she recognized his walk, hair and general appearance.

Both women positively identified defendant at a police lineup at county jail. Lira identified his hands, his shoes (dirty blue tennis shoes) which were those he wore at the laundromat, a tattoo on his left hand, his voice, the hair color and his height. She was absolutely positive of her in-court identification. Lucero recognized defendant's face, his shoes as those he wore in the laundromat and the tattoo on his hand. She positively identified defendant in court.

For the defense, Mrs. Smith testified defendant had done yard work and odd jobs for her for two years, and she considered him to be reliable and trustworthy; on the day of the attempted robbery, he had worked in her yard. Defendant denied attempting to rob Lira and claimed mistaken identity; at that time he was at the home of a "young lady" who lives behind Mrs. Smith's house.

I

EFFECTIVE ASSISTANCE OF COUNSEL

The information alleged that defendant suffered two prior serious felony convictions—residential burglary on June 20, 1980 (A021393), and residential burglary on May 22, 1979 (A019937). He denied the allegations, and his motion to bifurcate the trial from the issue of the priors was granted. Judgment was entered in case A019937 (1979) on defendant's plea of guilty to second degree burglary, and in A021393 (1980) on a jury verdict of guilty

of second degree burglary. Although each prior was alleged as a "serious felony" within the meaning of Penal Code section 667, subdivision (a), the record of conviction in each case reflected no more than second degree burglary, which does not establish a residential burglary,—a "serious felony" carrying a five-year enhancement, in this case ten years. Subsequent to the return of the jury verdict of guilty of attempted robbery, and in August 1986, after an advisement and waiver of his rights, and after consulting with his counsel, defendant withdrew his denials and admitted to be true both allegations. Defense counsel did stipulate "to the factual basis for the admission and waiver of rights and concur in the admissions." Based upon this stipulation the court found as to each prior that the admissions were freely and voluntarily made and "there is a factual basis for [them]."

Even though each prior felony conviction was alleged as a residential burglary, in fact, each was only second degree burglary and could not be adjudicated a serious felony within the meaning of section 667, subdivision (a); on the state of the record, in neither case could the People have proved the necessary entry into a residence. (*People* v. *Crowson* (1983) 33 Cal.3d 623, 634 [190 Cal.Rptr. 165, 660 P.2d 389].) In 1985 our Supreme Court in *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736] reaffirmed the law applicable here, "The record of a conviction for second degree burglary would not prove entry into a residence, even if the pleadings included superfluous allegations to that effect. (*People* v. *Crowson, supra,* 33 Cal.3d 623, 634.) Moreover, the People could not go behind that record to prove a fact which was not then an element of the crime. (*Id.,* at pp. 633-634; see *In re Finley* (1968) 68 Cal.2d 389, 393-394 [66 Cal.Rptr. 733, 438 P.2d 381]; *In re McVickers* (1946) 29 Cal.2d 264, 276 [176 P.2d 40]; *People* v. *Hickey* (1980) 109 Cal.App.3d 426, 438-439 [167 Cal.Rptr. 256].)" (P. 836.) Thus, in August 1986 the law was clear that the People could not have proved that either second degree burglary was a residential burglary.

■ Appellant asserts he was denied effective assistance of trial counsel because he not only did not advise him that the People could not have established that the alleged priors were residential burglaries, but stipulated to the factual basis therefor. We agree.

■ A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, he must show that counsel's performance was deficient; specifically, he must establish that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Second, he must establish prejudice. He must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in

the outcome. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 693-694, 104 S.Ct. 2052]; *People* v. *Ledesma* (1987) 43 Cal.3d 171, 216 [233 Cal.Rptr. 404, 729 P.2d 839].) Defendant has the burden of proving an ineffective assistance claim by a preponderance of the evidence. (*People* v. *Ledesma, supra,* 43 Cal.3d 171, 218.)

 A criminal defense attorney has a duty to carefully and diligently investigate all defenses of fact and of law that may be available to his client; and should promptly advise him of his rights and take all action necessary to preserve them. If counsel's failure to perform these obligations results in the withdrawal of a potentially meritorious defense, defendant has not had the assistance to which he is entitled. (*People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]). "Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission" (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 581 [189 Cal.Rptr. 855, 659 P.2d 1144]) or where "there simply could be no satisfactory explanation" therefor (*People* v. *Pope, supra,* 23 Cal.3d 412, 426).

 Here, defense counsel spoke briefly with defendant before the court was advised defendant wished to admit the priors; he joined in the waiver of defendant's constitutional rights and stood by as the prosecutor asked defendant if he understood that he was charged with two prior convictions of residential burglary; he permitted defendant to withdraw his denials and admit the truth of the allegations which he knew or should have known the People could not prove, and stipulated to the factual basis for his admissions. It is only too clear from the record that trial counsel had no rational tactical purpose for his conduct for which there can be no satisfactory explanation. This is one of those rare cases in which the appellate record demonstrates on its face that counsel's assistance was not competent and that defendant was prejudiced by that incompetence. Inasmuch as these admissions were not part of a sentence understanding, or part of a plea bargain, there simply could have been no advantage to defendant. There could have been no valid reason, tactical or otherwise, for trial counsel to have advised defendant to admit the prior felony allegations which would and did subject him to 10 additional years of imprisonment. If, knowing the law, he advised or even permitted defendant to admit the truth of the allegations, there can be no satisfactory explanation for his conduct; if he was unaware of the applicable law, which had been in existence long before 1986, he breached his duty to investigate all defenses of fact and law available to his client. As to prejudice, it cannot be reasonably argued that had defendant been aware the People could not prove the allegations, he would have voluntarily accepted the 10-year enhancement; we are not impressed

by respondent's suggestion that it is possible for reasons of his own defendant "simply wished to stand up and 'take his medicine.'" Defendant is entitled to a reversal of the trial court's finding that the allegations of "serious felony" convictions within the meaning of section 667, subdivision (a) are true based on defendant's admissions.[1]

## II

### MOTION TO SUPPRESS PROPERLY DENIED

■■■ The prosecutor having indicated his intention to use both prior felony convictions for impeachment purposes, defendant moved to suppress them. The motion was granted as to A019937, 1979, but denied as to A021393, 1980. Appellant contends that in denying the motion as to the 1980 prior, the trial court failed to exercise its discretion as required by section 352, Evidence Code, in that the record does not affirmatively show that it appraised the prejudicial effect of its use or engaged in the weighing process, or mentioned the *Beagle* (*People* v. *Beagle* (1972) 6 Cal.3d 441, 453-454 [99 Cal.Rptr. 313, 492 P.2d 1]) factors.

What does the record show? It shows that the trial court did exercise its discretion, did balance probative value against prejudice and, before doing so, did consider various factors. When defense counsel made his motion, he argued that the priors are "not recent priors in that they are over six years ago," and will unduly prejudice defendant and "perhaps deny him his right to testify in that the seriousness of those two prior convictions will have a prejudicial effect to the jury." The prosecution pointed out that they are very probative for impeachment purposes because they are not too remote in time (six or seven years old), each pertains to a moral turpitude crime, burglary, and "they would fit the *Castro* [*People* v. *Castro* (1985) 38 Cal.3d 301 (211 Cal.Rptr. 719, 696 P.2d 111)] requirements as well as the Beggle [*sic*] requirements." In denying the motion as to the 1980 prior, the court said, "Prop 8 allows for the admission of prior conviction of serious felonies that involve moral turpitude. I guess any felony involves moral turpitude. Whether it is classified as a serious felony or not. The court realizes under 362 [*sic*] that the court has the power to balance whether or not the

---

[1] At the time of sentence, counsel for the first time indicated that defendant should not have admitted the allegations: "In the interim between the time of the conviction and admitting the priors and today's date, I did some research in reference to the priors, and there is a case of People vs. Thomas. It is a 1986 case, 41 Cal.3d 837. That was a case in which the Supreme Court held that the prosecution could not prove a prior burglary was of a residence within the meaning of Penal Code section 667 where the conviction was for second degree burglary." Citing *People* v. *Jackson, supra,* 37 Cal.3d 826, which permits a defendant to admit a second 'degree burglary and that it involves a residence, the trial court denied defendant's motion to withdraw his admissions.

admission of the prior conviction is too prejudicial, but the reason for the admission of prior convictions involving a felony involving moral turpitude is so the jury can have some standard to judge the credibility of a witness and if the witness does have a prior felony involving moral turpitude. Although that by itself does not mean anything that a witness testifies to should be distrusted by the jury, but the jury can consider the fact that the witness does have a felony conviction and determine the credibility based on the standards that are from the jury instructions. So I do not feel that the probative value of the admission of the prior conviction of a felony is substantially outweighed by any prejudice to the defendant, therefore, I will allow the prosecution to use for impeachment purposes the burglary of July 21, 1980, in case A021393 and not the other because I feel that basically, that it would have the same effect. We are telling the jury that [defendant] does have a prior felony conviction."

We agree with appellant that the trial court's statement is not well articulated, but we do not agree that it did not exercise its discretion because, as asserted by appellant, it believed that in any case where a defendant had a prior felony conviction involving moral turpitude the probative value of the prior felony conviction would not be substantially outweighed by any prejudice to the defendant. This is not what the court said, and the statement cannot be so interpreted. It cannot be denied that the court found both burglaries to be felonies involving moral turpitude. ▮ In any case, regardless of the nature of the burglary, it is a crime that involves moral turpitude (*People* v. *Hunt* (1985) 169 Cal.App.3d 668, 675 [215 Cal.Rptr. 429]); thus, every burglary conviction is relevant to the issue of credibility, and admissible for impeachment purposes. (*People* v. *Statler* (1985) 174 Cal.App.3d 46, 54 [219 Cal.Rptr. 713].) ▮ It also found such felony convictions to be relevant to the impeachment process subject to the discretionary provisions of section 352 (*People* v. *Castro* (1985) 38 Cal.3d 301, 306 [211 Cal.Rptr. 719, 696 P.2d 111]), recognizing its balancing power under the statute. It is true that the record must affirmatively indicate that the weighing process pursuant to section 352 occurred (*People* v. *Green* (1980) 27 Cal.3d 1, 25-26 [164 Cal.Rptr. 1, 609 P.2d 468]); and the record so shows. But there is no requirement, as appellant seems to suggest, that the court must state its reasons in connection with its exercise of discretion under section 352. (*People* v. *Love* (1977) 75 Cal.App.3d 928, 939 [142 Cal.Rptr. 532]; *People* v. *Holt* (1972) 28 Cal.App.3d 343, 353 [104 Cal.Rptr. 572].)

The language in *Castro* rejected the "rigid, black letter rules of exclusion" of the *Antick* (*People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43] [the first case to apply the *Beagle* guidelines]) line of decisions in favor of the exercise of " 'sound' judicial discretion" (p. 307), but it is clear

that such "factors remain relevant to any application of section 352." *(People* v. *Collins* (1986) 42 Cal.3d 378, 391-392 [228 Cal.Rptr. 899, 722 P.2d 173].) Given the record before us, it cannot be said the court, in the balancing process under section 352, did not take into consideration that the priors involved moral turpitude and were probative in that they reflected on defendant's credibility, were not too remote in time, involved similar conduct for which he was being tried and, because of their "seriousness" defendant "perhaps" would not testify if they were used. *(People* v. *Beagle, supra,* 6 Cal.3d 441, 453-454 [99 Cal.Rptr. 313, 492 P.2d 1].) That the trial court did weigh probative value against probable prejudice is reflected in its refusal to permit the use of the 1979 prior on the ground that although use of one would not be prejudicial, use of two priors of the same type would be.

## III

### No Instructional Error

 Appellant contends the trial court erred in giving CALJIC 2.21—that a witness willfully false in one material part of his testimony is to be distrusted in others—and CALJIC 1.20, defining the word "willfully." Relying on *People* v. *Lescallett* (1981) 123 Cal.App.3d 487 [176 Cal.Rptr. 687], he argues first, that CALJIC 2.21 was prejudicial to his defense because it appeared to be directed principally toward his exculpatory testimony since it conflicted with the testimony of the two eyewitnesses. He asserts that "generally," the instruction prejudices a defendant's right to a fair trial and violates his right to due process and "reverses" the burden of proof. The instruction is a correct statement of the law and appropriate where there is an evidentiary basis to support it. *(People* v. *Hempstead* (1983) 148 Cal.App.3d 949, 956 [196 Cal.Rptr. 412], and cases cited therein.)

If the testimony of defendant were true, it would be probable that the victim and the other eyewitness were mistaken or "willfully false" in their testimony; thus, the instruction would be directed and apply as well to the prosecution witnesses. *(People* v. *Lescallett, supra,* 123 Cal.App.3d 487, 492 [176 Cal.Rptr. 687].) There was substantial conflict between defendant's testimony that he did not commit the crime and was at his girlfriend's house at the time, and that of Lira and Lucero that defendant attempted to rob Lira. But there was no suggestion, as the case went to the jury with proper instructions on the presumption of innocence and the burden of proof, that CALJIC 2.21 was directed principally toward defendant's exculpatory testimony. Further, the jury was instructed that it was not bound to decide in conformity with the testimony of a number of witnesses

(CALJIC 2.22) and that the burden was on the prosecution to prove the correctness of an eyewitness identification which required proof beyond a reasonable doubt (CALJIC 2.91), and in addition, it was told the factors for the determination of the believability of the eyewitness, and those bearing on the accuracy of the witness's identification (CALJIC 2.92).

As aptly pointed out by appellant, the nature of the identification testimony of the victim and Lucero was such that CALJIC 2.21 could be directed as well to it. He argues their identification testimony was suggestive of mistake or possible fabrication—that identifications of him became more detailed following each identification. Given the foregoing, nothing in CALJIC 2.21 focused attention on the defense or defendant's testimony. Further, evidentiary basis for the instruction was present. In *People* v. *Hempstead, supra,* 148 Cal.App.3d 949, Hempstead shot two victims; one died, the other was wounded. The case is similar to the one herein in that it was Hempstead's testimony (of accidental shooting) against that of the eyewitnesses. The court rejected Hempstead's argument that CALJIC 2.21 lacked any evidentiary basis, and in any event it should not be permitted in California. Said the court, "The court did not err. CALJIC No. 2.21 has been upheld as a correct statement of the law. (*People* v. *Williams* (1975) 51 Cal.App.3d 65, 67-68 [123 Cal.Rptr. 891]; *People* v. *Blankenship* (1959) 171 Cal.App.2d 66, 83-84 [340 P.2d 282]; see *People* v. *Lescallett* (1981) 123 Cal.App.3d 487, 492-493 [176 Cal.Rptr 687].) The instruction had an ample evidentiary basis: for example, the jury could have found material falsity in the testimony of either Hempstead or the eyewitnesses, in light of their conflicting testimony as to the sequence of the gun's firing." (P. 956.) While the testimony of Lira and Lucero amply supports CALJIC 2.21, so does that of defendant. Defendant's failure to produce at trial the witness who could have confirmed his alibi, his "lady friend," cast suspicion of a willful falsification on his part. CALJIC 2.21 was appropriate.

■ There is no merit to appellant's challenge to CALJIC 1.20 defining "willfully" where, as here, specific intent is an element of the crime. He cites *People* v. *Geibel* (1949) 93 Cal.App.2d 147 [208 P.2d 743] and *People* v. *Warren* (1959) 175 Cal.App.2d 233 [346 P.2d 64] and, without citation of authority, claims the error was compounded by CALJIC 3.31 which incorrectly defined the specific intent required for attempted robbery.

Since *Warren,* decided in 1959, there has been a modification of the language of CALJIC 1.20. CALJIC 1.20 provides, "The word 'willfully,' when applied to the intent with which an act is done or omitted and *as used in my instructions,* implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law or to injure another, or to acquire any advantage." (Italics added.) When *Geibel* and *Warren* were decided, the

words, *"as used in my instructions"* were not part of the instruction. Here CALJIC 1.20 could not apply to the crime charged, for in no instruction given is the word "willfully" used in connection with the elements of robbery and attempted robbery. Its only use is found in the opening sentence of CALJIC 2.21—"A witness *willfully* false in one material part of his testimony is to be distrusted in others." (Italics added.) Thus, inasmuch as CALJIC 1.20 is self-qualifying and restricts its application to the word "willfully" *"as used in my instructions,"* under any fair reading of CALJIC 1.20, there is no possibility of confusion or that the jury would be misled to apply that definition to any other required determination of mental state.

CALJIC 3.31 (Concurrence of Act and Specific Intent) provides among other things, "The crime of attempted robbery requires the specific intent to commit the crime to [*sic*] permanently deprive the owner of his property." Not as independent error but as a compounding factor, appellant asserts this definition is erroneous since attempted robbery requires a specific intent to commit the crime of robbery, for which proposition he cites no authority. His contention is without merit. He concedes the correctness of CALJIC 9.10, given, which defines the specific intent necessary for robbery—"such property was taken with the specific intent permanently to deprive such person of the property." We have some difficulty in understanding appellant's contention, for the specific intent to commit an attempted robbery logically must be the same specific intent necessary for the commission of the robbery itself, i.e., the specific intent to permanently deprive the victim of his property. During closing argument defense counsel conceded that the attempted robbery occurred. The evidence was such as to preclude any suggestion defendant did not have the specific intent permanently to deprive Lira of her money; the sole question here was whether defendant was the one who committed the acts in question, for his sole defense was alibi. (Cf. *People* v. *Smith* (1963) 223 Cal.App.2d 225, 233 [35 Cal.Rptr. 719].)

### DISPOSITION

That portion of the judgment reflecting the finding that the two allegations of prior "serious felony" conviction of residential burglary within the meaning of section 667, subdivision (a), Penal Code, are true is reversed; in all other respects the judgment is affirmed.

Thompson, J., and Johnson, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 7, 1988.