[No. B025363. Second Dist., Div. Five. July 11, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY CARDELL GOODWIN, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The parts certified for publication follow.

**COUNSEL**

Harvey Zall, State Public Defender, and Monica Knox, Acting State Public Defender, under appointment by the Court of Appeal, and Sandra L. Goldsmith, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Marc E. Turchin and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BOREN, J.**—Gregory Cardell Goodwin was convicted by a jury of two counts of first degree burglary (Pen. Code, § 459) with findings as to each count that the burglary was of an inhabited dwelling within the meaning of the probation-restriction provision of Penal Code section 462, subdivision (a). He contends on appeal that the trial court erred in instructing the jury . . .* as to how to view a witness's testimony which is willfully false in part or contains discrepancies (CALJIC No. 2.21). He also argues that the burglary convictions must be reduced to second degree because the jury failed to specifically determine the degree of the burglaries.

### FACTS

Virginia Byrne had been the resident manager of an apartment complex on Cherry Avenue in Los Angeles for 11 years and in July 1986 hired appellant as a maintenance man for the apartments. On August 3, 1986, Byrne, as was her custom, put the rent money she had collected from the tenants in the top drawer of her desk in the office which was adjacent to the apartment in which she lived. Later that day, Byrne discovered that $900 in cash was missing. Thereafter, she placed the rent money in a brown wooden box kept underneath a metal box in her master bedroom.

As a maintenance man, appellant was instructed to notify the manager when he had to enter an apartment for repairs. Tenants would be notified before he entered. If appellant entered an apartment when the tenants were not present, he was to leave the drapes and door open. Appellant, who lived in an apartment in the complex, had a key to the office and access to apartment keys.

On August 12, 1986, at approximately noon, Patti Anderberg left and locked her apartment. When she returned in the evening, she discovered some jewelry missing. Anderberg reported the missing jewelry to the apartment manager and the police. She had not complained to anyone about water leaking in her apartment.

Seng Chorr, another resident in the apartment complex, was sitting by the pool on the afternoon of August 12, 1986, when he saw appellant enter Anderberg's apartment at approximately 3 p.m. Appellant remained inside the apartment at least 45 minutes, the period of time during which Chorr remained by the pool and did not see appellant leave the apartment. The

---

*See footnote, *ante,* page 940.

drapes and door of the apartment remained closed while appellant was inside.

On the morning of August 13, 1986, Byrne locked her office and apartment and left for 45 minutes. That afternoon, when she went to her apartment to get the rent money for a deposit, she discovered that the money was missing. Byrne called the police. She also advised appellant of the missing money, accused him of being implicated, told him that he might lose his job because of it, and asked him to remain near the apartment complex until the police arrived.

Also on August 13, appellant told Byrne that he had entered Anderberg's apartment to check for leaks. Appellant claimed that Mr. Hanna, a tenant living below Anderberg, had complained of a leak in their bathroom, and appellant was searching for the source of the leak in the apartment above. Although required to do so, appellant had not sought Byrne's permission to enter Anderberg's apartment. As Byrne then discovered, Mrs. Hanna had not complained to appellant about any leaks in her apartment, and Mr. Hanna was overseas at the time. Byrne also checked both the Hanna and the Anderberg apartments but found no leaks.

That evening, at approximately 8 p.m., Byrne saw appellant leave the apartment complex with a woman. The following morning, appellant did not appear for work. At approximately 10 a.m., Byrne went to appellant's apartment. Appellant was not home, the apartment door was open, and his work belt and keys were on the kitchen counter. Inside the apartment, Byrne found a rent receipt, signed by her, and several money orders which had been used by tenants to pay their rent. The items Byrne found in appellant's apartment had been in Byrne's apartment in the brown box where she kept the rent money. Several thousand dollars in cash and money orders were missing from the box.

Byrne reported her findings to the police. On August 14, 1986, she changed the lock on appellant's apartment. Byrne next saw appellant on August 23, 1986, when he came to her door and requested his paycheck. Byrne called the police, and appellant was arrested.

In defense, appellant claimed that he entered Anderberg's apartment to fix a plumbing leak, that the tenant in the apartment below had complained of a leak, that he could not find the manager to obtain her permission to enter the apartment, and that he considered the situation an emergency because water was pouring into the apartment below. Appellant denied stealing anything from Anderberg's apartment or from Byrne's apartment.

Appellant further asserted that he stayed at his apartment the night of August 13, 1986, and that he did not appear for work the next morning but went out the next day to look for a job because he believed he had been fired. He did not stay at his apartment the evening of August 14 because the lock on the apartment had been changed.

## DISCUSSION

## I*

. . . . . . . . . . . . . . . . . . . .

## II

■ Contrary to appellant's contention, the court did not err in instructing the jury on how to view a witness's testimony which is willfully false in part or contains discrepancies.[2] The instruction has been repeatedly approved as a correct statement of the law and appropriate where there is an evidentiary basis to support it. (*People* v. *Plager* (1987) 196 Cal.App.3d 1537, 1546 [242 Cal.Rptr. 624]; *People* v. *Hempstead* (1983) 148 Cal.App.3d 949, 956 [196 Cal.Rptr. 412]; *People* v. *Lescallett* (1981) 123 Cal.App.3d 487, 492-493 [176 Cal.Rptr. 687]; *People* v. *Williams* (1975) 51 Cal.App.3d 65, 67-68 [123 Cal.Rptr. 891]; *People* v. *Blankenship* (1959) 171 Cal.App.2d 66, 83-84 [340 P.2d 282].)

Nonetheless, appellant points to dictum in *People* v. *Lescallett, supra,* 123 Cal.App.3d 487, 493, that "[i]t may be . . . that such an instruction should be avoided where, under the circumstances of the case, it might appear to be directed principally toward a defendant's exculpatory testimony." From this notion, appellant urges that his right to a fair trial and due process was violated and the burden of proof was impermissibly reversed because appellant did testify. Therefore, he suggests that under the circumstances of this

---

\* See footnote, *ante,* page 940.

[2] The jury was instructed, pursuant to CALJIC No. 2.21, as follows: "A witness willfully false in one material part of his testimony is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you shall believe the probability of truth favors his testimony in other particulars. [¶] However, discrepancies in a witness' testimony or between his testimony and that of others, if there were any, do not necessarily mean that the witness should be discredited. Failure of recollection is a common experience; and the innocent misrecollection is not uncommon. It is a fact, also, that two persons witnessing an incident or a transaction often will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance."

case, CALJIC No. 2.21 might appear to be directed toward appellant's exculpatory testimony.

Nothing in the language of the instruction itself improperly singled out appellant. By its terms, the instruction referred only to "a witness" and not to anyone by name or legal status. The jury was also instructed that "every person" who testified under oath is a witness (CALJIC No. 2.20), and that no statement by the court was intended to suggest that the jury should believe or disbelieve "any" witness (CALJIC No. 17.30).

Appellant's position is, in essence, that there was too strong a factual basis which supported instructing the jury as to CALJIC No. 2.21, because appellant's testimony admittedly contained numerous conflicts and discrepancies which thus focused the instruction on his defense testimony. To the extent that the instruction focused on the falsity and discrepancies in appellant's testimony, the instruction properly did its job. Appellant may well have been prejudiced. However, the prejudice arose not from CALJIC No. 2.21, but from the damning nature of appellant's own testimony.

The weaknesses in appellant's testimony should not be ignored or given preferential treatment not granted to the testimony of any other witness. As it has been aptly noted in other contexts, a defendant who elects to testify in his own behalf is not entitled to a false aura of veracity. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1] (impeachment with prior conviction); *People* v. *Zack* (1986) 184 Cal.App.3d 409, 415 [229 Cal.Rptr. 317] (impeachment with evidence of prior assaults on decedent).) Appellant was not entitled to have the jury determine his guilt or innocence guided by jury instructions which would ignore the false or inconsistent testimony of any witness, including appellant.

### III

■ Appellant's final contention that both burglary convictions should be reduced to the second degree by operation of law is also meritless. In the procedural context of this case, the jury did sufficiently designate the degree of the burglaries, as required by Penal Code section 1157.[3]

Appellant was charged in the information with two counts of "residential burglary, in violation of Penal Code section 459" in that as to both counts

---

[3] Penal Code section 1157 provides that "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

he "did willfully and unlawfully enter an inhabited dwelling house . . . and [an] inhabited portion of a building," which was an occupied "residence," with an intent to commit larceny. At one point during the reading of the jury instructions and pursuant to the court's invitation, both counsel "stipulated" that "under the facts of this case it could only be burglary of the first degree." The court immediately thereafter explained to the jury that "there will not be a specific finding on the verdict form. It has been stipulated that the burglary in this case, if you should so find that one took place by the defendant, is burglary of the first degree."[4] The verdict forms subsequently returned by the jury found appellant "guilty of residential burglary, in violation of Penal Code section 459, a Felony, as charged in Count I [and Count II] of the information." The judgment indicated convictions of first degree burglary, and appellant was sentenced accordingly on both counts.

We agree with the reasoning in *People v. Anaya* (1986) 179 Cal.App.3d 828, 831-832 [225 Cal.Rptr. 51], which confronted this question in a similar procedural context where the verdict forms did not find the degree of the burglaries by designating first or second degree but did specify, with a direct reference to the statutory definition of first degree burglary, that each burglary was committed upon " 'an inhabited building and a residence.' " (*Id.* at p. 831.) In an analogous situation involving a court trial, *People v. Deay* (1987) 194 Cal.App.3d 280 [239 Cal.Rptr. 406] held the finding sufficient for first degree burglary where at the conclusion of the trial the court explicitly found the defendant guilty of "residential burglary" and referred to counts in the information containing similar language.

Penal Code section 1157 and its counterpart for pleas of guilty, section 1192, requiring a determination of the degree of the crime when the offense is divided into degrees, have been strictly and literally applied in favor of defendants (*People v. Williams* (1984) 157 Cal.App.3d 145, 154-155 [203 Cal.Rptr. 562]), occasionally resulting in what has been characterized as a triumph of form over substance (*id.* at p. 153; see *People v. Anaya, supra,* 179 Cal.App.3d at p. 831; *People v. Lamb* (1986) 176 Cal.App.3d 932, 934 [222 Cal.Rptr. 570]). The frustration with form over substance arises because "the statute applies to reduce the degree [of the crime] even in situations in which the jury's intent to convict of the greater degree is demonstrated by its other actions . . . ." (*People v. McDonald* (1984) 37 Cal.3d 351, 382 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].) Accordingly, section 1157 has been applied to reduce the offense even where, for

---

[4]Appellant's complaint that the manner in which the court invited counsel's stipulation constituted misconduct is unfounded. Viewed in the proper context, although the court's brief statement to counsel did not state the obvious premise that a burglary would first have to be found and appellant determined to be the burglar, the admonition to the jury immediately thereafter was specific and clear on this point.

example, the jury returned a special circumstance finding which necessarily was predicated upon a determination of first degree murder (*id*. at pp. 381-383), or where the jury found true a related enhancement allegation from which the higher degree of the offense logically could be inferred (*People* v. *Beamon* (1973) 8 Cal.3d 625, 629, fn. 2 [105 Cal.Rptr. 681, 504 P.2d 905]).

Here, however, Penal Code section 1157 does not apply to reduce the degree of the offenses, because the verdict forms did not find appellant guilty simply of burglary without any indication of the degree. The jury's verdict form did specifically find appellant guilty of "residential burglary . . . as charged" in the information which alleged the burglary of an "inhabited" dwelling. "Every burglary of an inhabited dwelling house . . . or the inhabited portion of any other building, is burglary of the first degree." (Pen. Code, § 460.) There is also "no practical difference between burglary of an inhabited dwelling house and residential burglary." (*People* v. *Deay, supra,* 194 Cal.App.3d at p. 284.) Accordingly, since the verdict forms specified "residential burglary" and referred to the information which described "an inhabited dwelling house," necessarily constituting burglary of the first degree, the jury satisfied the requirement that it specify the degree "in the verdict form." (*People* v. *McDonald, supra,* 37 Cal.3d at p. 382.)

There is no logical reason to compel the fact finder to articulate a numerical degree when, by definition, "first degree burglary" and "residential burglary" are one and the same thing. To the extent that the court in *In re Jacob M.* (1987) 195 Cal.App.3d 58, 62-63 [240 Cal.Rptr. 418] arrives at a contrary conclusion, we decline to follow it. A descriptive and definitive label constitutes an acceptable alternative to specifying degree by number.

In the present case, "There is nothing uncertain or ambiguous in the jury's findings. The jury's findings here differ from an enhancement or other special finding on a separate form." (*People* v. *Anaya, supra,* 179 Cal.App.3d at p. 832.) The purpose of the special findings in cases such as *McDonald* and *Beamon* was other than to describe the degree of the crime. The verdict forms here, however, accurately reflected the stipulation that if any burglary occurred, it was first degree burglary.

Moreover, the conclusion that the jury's verdict form was sufficiently explicit as to the degree of the crime is particularly appropriate in view of this stipulation and the rationale for Penal Code section 1157. ■ The Legislature has required an express finding on the degree of the crime to protect the defendant from the risk that the degree of the crime could be increased after the judgment. (*People* v. *Anaya, supra,* 179 Cal.App.3d at p. 832; *People* v. *Lamb, supra,* 176 Cal.App.3d at p. 935.) ■ ■ ■ ■ ■ Since it was stipulated that if appellant was guilty of anything, it was

first degree burglary, there was no risk that the degree of the crime would be increased after the judgment.[5]

## DISPOSITION

The judgment is affirmed.

Ashby, Acting, P. J., and Kennard, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 1988.

---

[5] We also note that the stipulation was validly taken even though appellant had not been fully apprised of and had not waived his rights. (See *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) The situation involved not a waiver of rights or the admission of an offense, but rather essentially a simple stipulation of fact (i.e., that if any structure was unlawfully entered, it was an inhabited dwelling) which was not inconsistent with appellant's defense at trial. (See *People* v. *McCoy* (1974) 40 Cal.App.3d 854, 859 [115 Cal.Rptr. 559]; *People* v. *Chasco* (1969) 276 Cal.App.2d 271, 275-276 [80 Cal.Rptr. 667].)