[No. B034819. Second Dist., Div. Seven. May 3, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RODERICK ATKINS, Defendant and Appellant.

48

**COUNSEL**

Harvey Zall, State Public Defender, under appointment by the Court of Appeals, and Jill Ishida, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Donald J. Oeser and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

LILLIE, P. J.—A jury found defendant guilty of burglary of a residence. (Pen. Code, § 459.) Defendant waived a jury on the allegations, inter alia, that he was previously convicted of two serious felonies (Pen. Code, § 667, subd. (a)), and that he has served three prior prison terms (Pen. Code, § 667.5, subd. (b)). The court found all allegations to be true and sentenced defendant to state prison for the midterm of four years for the burglary, plus five years for each of the two prior serious felonies and one year for each of two prior prison terms,[1] all enhancements running consecutively to each other and to the base term, for a total of sixteen years.

Defendant appeals from the judgment of conviction, reflected in the abstract of judgment as that of first degree burglary. He contends that (1) his conviction must be reduced to second degree burglary due to the alleged failure of the jury to determine the degree of burglary and (2) one of the one-year enhancements pursuant to Penal Code section 667.5, subdivision (b) must be stricken because there was insufficient evidence that he served a prior prison term.

### FACTS

Carol Jarvis locked the doors of her apartment in Pasadena before leaving around 7:45 a.m. on March 4, 1987. When she returned at 11:20, the

---

[1] Two of the prior prison sentences were part of the same commitment and were considered one "prior separate prison term" under Penal Code section 667.5, subdivision (b). (See Pen. Code, § 667.5, subd. (g).)

deadbolt on the front door was unlocked and a dining room window blind she always kept down, was up; the dining room window, which had been painted and closed a fraction of an inch from the sill, was all the way down; the screen was off the window and resting against a tree; the contents of a handbag she had left behind were spilled out on the coffee table. She called police. Jarvis went upstairs with the police officer and saw two of her drawers emptied on the bed. Her jewelry boxes had been emptied. Some loose rings were missing from the top of the dresser. Over 30 pieces of jewelry were missing. Subsequently, she identified one of her stolen rings at Crown City Loan and Jewelry in Pasadena, and another of her rings at Howard Diamond Company in Los Angeles. Jarvis also recovered from Detective Richter her stolen pocket watch, ring set, and gold chain and locket.

On March 4 at 1:10 p.m., Arvid Garrett of Crown City Loan and Jewelry bought a diamond ring from defendant. At the time of the sale, Garrett compared the photograph and signature of the seller's driver's license to the seller and also put the thumb print of the seller on the back of a buy slip. Anything that is bought is numbered and kept for 30 days until the police look over the buy slips; if the item is "hot," the police come and tell him and the person who has lost merchandise has a chance to redeem it. Garrett later turned over to police the ring he bought from defendant.

At 4:20 p.m. on March 4, Stephen Safan of Howard Diamond Company took information from a person selling to his firm a ladies' white gold diamond ring. Safan required a driver's license to be shown and compared the photograph and signature thereon to defendant and to defendant's signature. Subsequently, Carol Jarvis was brought in by the police to claim the ring.

A fingerprint taken from the exterior windowsill of a rear window of Jarvis's apartment matched defendant's prints. Defendant's fingerprints were also found on two pawn slips.

After receiving a call from Detective Richter on March 20, 1987, Al Oshiro, defendant's supervising counselor at his residential home in Los Angeles, searched defendant's room, which defendant occupied alone, and found three rings, a pocket watch, and a locket and chain, all belonging to Jarvis. Oshiro testified that on March 4, defendant left the home at about 7 a.m. and went by bus to the Pasadena Work Skill Center, which was about six-tenths of a mile from Jarvis's residence; defendant finished school at the Center at 3 p.m. and would usually be back home by 5 p.m.

Wilma Summers testified for the defense. On March 4, she was employed by the Regional Occupation Program as a restaurant manager and also as a part-time teacher. Defendant was one of her students, whom she supervised

in preparing cafeteria food. He was a model student and although she did not remember specifically when he arrived on March 4, he would usually arrive at around 8 a.m. He was not absent between February 23 and March 20, 1987. Classes ran from 8:30 to 3 or 3:30, with breaks scheduled around 10:30 or 11 a.m., when the students would usually sit in the cafeteria and have their break. The students would sign themselves in, and the students' sign-in times were not verified. Frequently, the students would leave at 1 or 1:30, but the roll would still reflect that they had credit for six hours. It was possible for them to leave once they arrived. Although there were times when students would leave before the program let out, she did not have that problem with defendant. Had defendant left during the class period, she would usually have known about it, but could not be certain.

## I

## THE JURY DETERMINED THE DEGREE OF BURGLARY

Penal Code section 1157 provides in part that "Whenever a defendant is convicted of a crime . . . which is distinguished into degrees, the jury . . . must find the degree of the crime . . . of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime . . . of which the defendant is guilty, shall be deemed to be of the lesser degree."

The jury herein returned the following verdict: "We, the jury in the above-entitled action, find the Defendant Roderick Atkins guilty of burglary of a residence, in violation of Penal Code section 459, a felony, as charged in Count I of the Information."

■ Appellant relies on *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011] and *People* v. *Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905] to support his contention that his conviction should be reduced to second degree burglary because the verdict fails to specify the degree of burglary. In *McDonald,* the court held that the jury's failure to specify the degree of murder in its verdict rendered defendant's conviction one of second degree murder by operation of Penal Code section 1157, and the determination of degree could not be inferred from the fact that the jury was instructed solely on first degree murder or from the jury's separate finding the special circumstance allegation was true, where the jury was instructed to determine whether the special circumstance was true only if it found defendant guilty of first degree murder. (37 Cal.3d at pp. 380-383.)

In *Beamon,* the court held that despite the jury's conviction of defendant for robbery and a finding that defendant was armed with a deadly weapon at the time of the commission of the robbery, the jury failed to apply such

finding to fix the degree of that crime, thus requiring that the conviction be deemed to be of the second degree. (8 Cal.3d at p. 629, fn. 2.)

However, appellant acknowledges a line of cases which stand for the proposition that verdict forms or court findings stating that defendant was guilty of "residential burglary" or "burglary . . . upon an inhabited building and a residence" are tantamount to findings of first degree burglary. (*People* v. *Goodwin* (1988) 202 Cal.App.3d 940 [249 Cal.Rptr. 430]; *People* v. *Anaya* (1986) 179 Cal.App.3d 828 [225 Cal.Rptr. 51], and *People* v. *Deay* (1987) 194 Cal.App.3d 280 [239 Cal.Rptr. 406].) Appellant claims that the latter cases cannot be reconciled with *Beamon* and *McDonald* and should not apply to the instant case. We disagree. *Anaya, Deay,* and *Goodwin* are dispositive of the instant case, which is distinguishable from *Beamon* and *McDonald*.

The court in *Deay* distinguished *McDonald* and *Beamon,* noting that in those cases the degree of the crime was implied by other subsequent findings, such as a finding of special circumstances. (194 Cal.App.3d at p. 285.) "The purpose of the special findings in cases such as *McDonald* and *Beamon* was other than to describe the degree of the crime." (*People* v. *Goodwin, supra,* 202 Cal.App.3d 940, 947.)

In *Goodwin,* however, the verdict forms "did not find appellant guilty simply of burglary without any indication of the degree. The jury's verdict form did specifically find appellant guilty of 'residential burglary . . . as charged' in the information which alleged the burglary of an 'inhabited' dwelling. 'Every burglary of an inhabited dwelling house . . . or the inhabited portion of any other building, is burglary of the first degree.' (Pen. Code, § 460.) There is also 'no practical difference between burglary of an inhabited dwelling house and residential burglary.' (*People* v. *Deay, supra,* 194 Cal.App.3d at p. 284.) Accordingly, since the verdict forms specified 'residential burglary' and referred to the information which described 'an inhabited dwelling house,' necessarily constituting burglary of the first degree, the jury satisfied the requirement that it specify the degree 'in the verdict form.' [Citation.] [¶] There is no logical reason to compel the fact finder to articulate a numerical degree when, by definition, 'first degree burglary' and 'residential burglary' are one and the same thing." (202 Cal.App.3d at p. 947.)

In the case at bar, we do not need to look beyond the verdict form to conclude that the jury found appellant guilty of burglary of a residence, which by definition is first degree burglary. Further, it is clear from the information and instructions given the jury[2] as well as defense counsel's

---

[2] The amended information charged appellant with "the crime of residential burglary" and further stated that he "did willfully and unlawfully enter an inhabited dwelling house . . . and inhabited portion of a building occupied by Carol Jarvis . . . ."

arguments,[3] that there was no dispute that the burglary was of a residence; the only dispute was whether the defendant committed it. Therefore, the purpose of the language in the verdict that defendant was guilty of "burglary of a residence" was to fix the degree of the crime. Inasmuch as the rationale for Penal Code section 1157 is to protect the defendant from the risk that the degree of the crime could be increased after the judgment (*People* v. *Goodwin, supra,* 202 Cal.App.3d at p. 947), there was here no such risk. We conclude that the verdict reflects that the jury determined the burglary to be of the first degree.

## II

### SUFFICIENT EVIDENCE ESTABLISHED APPELLANT SERVED PRIOR PRISON TERM

To prove the allegation that defendant served a prior prison term for receiving stolen property in case number A566687, the prosecutor presented photostatic copies of Department of Correction records and a photostatic copy of a certification by the custodian of records for the department that the copies were from the department's files.

Defense counsel objected to the admission of any records where the certifications were copies. The trial court found the documents were authentic and admitted them.[4] ■ Appellant contends the court's ruling was

---

The trial court instructed the jury: "Every person who enters any residence with the specific intent to steal, take or carry away the personal property of another of any value and with the further specific intent to deprive the other permanently of such property is guilty of the crime of burglary. . . . [¶] In order to prove the commission of the crime of burglary, each of the following elements must be proved: 1. That a person entered the residence, [¶] 2. That at the time of the entry such person had the specific intent to steal and take away someone else's property and intended to deprive the owner permanently of the property."

[3] Defense counsel stated at closing argument: "[T]he question that you must answer at this time is whether the prosecution has proved its case beyond a reasonable doubt. . . . We are not asking about whether there is a likelihood or possibility or even a probability that Mr. Atkins committed the crime of burglary which is entering a residence with the intent to steal. . . . [¶] Miss Jarvis testified she was in fact burglarized on the 4th of March. No question about that. Nobody is arguing about that. The question is was Mr. Atkins there at the time."

[4] The trial court stated with respect to the documents that "[Exhibit] 16 has original signatures on two pages. The front page, I'm really unable to ascertain whether that's a xerox signature or whether it's somebody's signature. Reason why I always sign everything with a blue felt pen is because then you know what the original is. . . . [¶] Well, I'm going to resolve any ambiguity in favor of the authenticity of 16, and I do that by looking at the internal consistency of the documents, those that are definitely genuine, which are the certified copies of the abstract of judgments, one being from this very court and this judge, the other being from Judge Williams, who did serve in this division of the superior court, Northeast Division, at or about the time as indicated, and that's authenticated. [¶] That document refers to—a number appears underneath the mug shot which appears to be the defendant, which is page 1 of the documents, and that number appears on the cumulative case summary at the lower

incorrect because the best evidence rule (Evid. Code, § 1500) precluded admission of the certification, and "Without the certification, the documents were inadmissible and without the documents there was insufficient evidence to support the prior prison term allegation . . . ." Appellant also claims that without the certification, the records were inadmissible under Penal Code section 969b.[5]

Preliminarily, we note that in admitting the documents, the trial court made no reference to the best evidence rule, although defense counsel's objection may reasonably be construed to raise such issue. ██ ██ The remarks of the trial court in passing on the admissibility of evidence do not affect the validity of its determination to admit the evidence, for in measuring the correctness of a trial court's rulings we look to what the trial court did, not to what it said. (*People* v. *Garrett* (1972) 29 Cal.App.3d 535, 540 [104 Cal.Rptr. 829].) We thus address appellant's contentions.

Evidence Code section 1500 provides: "Except as otherwise provided by statute, no evidence other than the original of a writing is admissible to prove the content of a writing." The Law Revision Commission Comment to the statute as originally enacted in 1965 states that "The rule is designed to minimize the possibilities of misinterpretation of writings by requiring the production of the original writings themselves, if available."

An exception to the best evidence rule is set out in Evidence Code section 1511, added by Statutes 1985, chapter 100, section 2: "A duplicate is admissible to the same extent as an original unless (a) a genuine question is raised as to the authenticity of the original or (b) in the circumstances it would be unfair to admit the duplicate in lieu of the original." A "duplicate" is defined by Evidence Code section 260 as "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, . . . or by mechanical or electronic rerecording, or by chemical reproduction, or by other equivalent technique which accurately reproduces the original."

---

left-hand corner together with the name Atkins, Roderick Lenn. [¶] Then, on the last page, is a fingerprint exemplar card with the full set of prints of the person referred to as Atkins . . . and signed by Roderick Atkins. [¶] So even though there may be some doubt as to whether or not that first signature is original or xeroxed, I'm going to resolve that doubt in favor of the authenticity of all the documents, and refer to a document number 14, which is a fingerprint exemplar card signed by Roderick Atkins. And I'll compare those two signatures. . . . [T]he signature appears to be the same. So I think 16 is authentic."

[5] Section 969b provides that "For the purposes of establishing prima facie evidence of the fact that a person being tried for a crime or public offense under the laws of this State has been convicted of an act punishable by imprisonment in a state prison . . . and has served a term therefor in any penal institution . . . the records or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence."

"As enacted in 1985, section 1511 brings California into line with the Federal Rules of Evidence on the admissibility of duplicates. [Citations.] This change was advocated by the California Law Revision Commission as early as 1975, because '[t]he development of accurate methods of . . . reproduction which produce copies identical to the original have resulted in a reexamination by the courts and evidence authorities of the need for the production of original writings as required by the "best evidence rule."'' (13 Cal. Law Revision Com. Rep. (1975) p. 2119; see McCormick on Evidence (3d ed. 1984) pp. 712-714.)" (*People* v. *Garcia* (1988) 201 Cal.App.3d 324, 328 [247 Cal.Rptr. 94].) Under Federal Rules of Evidence, rule 1003, which is identical to Evidence Code section 1511, the burden is on the opponent to raise a genuine issue as to authenticity of the original or to show that under the circumstances it would be unfair to use the duplicate in lieu of the original. (*Id.,* at p. 329.)

Appellant herein raised no issues of authenticity or unfairness at trial, nor does he do so in his brief on appeal. Moreover, it is clear from our record that the photostatic copy of the certification so accurately reproduced the original that the court was unable to determine whether the custodian's signature was an original signature or a "xerox signature." We conclude that Evidence Code section 1511 adequately supports the admission into evidence of the certification. Because the records were certified, they were properly admitted pursuant to Penal Code section 969b. In light of this conclusion, we need not address the issue, raised by respondent, of whether the court properly concluded the underlying records, independent of the certification, were authentic.

### DISPOSITION

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 1989.