* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part IIA.

[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 260 
OPINION
A jury convicted James Dale Coon of transporting methamphetamine (Health Saf. Code, § 11379, subd. (a); count 1), possessing methamphetamine for sale (Health Saf. Code, § 11378; count 2), receiving a stolen vehicle (Pen. Code, § 496d; count 6), being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a); count 9), being a felon in possession of ammunition (Pen. Code, § 12316, subd. (b)(1); count 10), and possessing a vehicle component with a defaced or destroyed identification number (Veh. Code, § 10751, subd. (a); count 11).[1] In a separate proceeding, the trial court found true allegations Coon committed counts 1, 2, 6, 9, and 10 while out on bail. (Pen. Code, § 12022.1, subd. (b).) The trial court sentenced Coon to a term of three years four months in prison.
Coon appeals, arguing the trial court prejudicially erred by admitting evidence of his uncharged possession of methamphetamine in the prosecution's rebuttal case. Coon also argues the trial court prejudicially erred in admitting faxed copies of certified court records to establish he was on bail *Page 261 
when he committed the crimes charged in counts 1, 2, 6, 9, and 10. We affirm the judgment.
 I
Coon is a convicted felon whose home was searched by officers from the regional auto theft task force in March 2006 and May 2006.
March 2006 Search
During the first search, police found a stolen 1998 Yamaha quad beneath a hydraulic lift in Coon's backyard. He told police he had bought the quad for $400; however, he was unable to provide any other details about the purchase.
In addition, police found a motorcycle in Coon's garage. The identification number on the motorcycle's transmission had recently been obliterated. He told La Mesa Police Officer Andrew Golembiewski he had bought the transmission for $150. He mentioned the obliterated transmission number to the seller. The seller told him not to worry about it and to put his own number on the transmission.
Police also found hundreds of rounds of ammunition in Coon's garage as well as a loaded Smith Wesson .357 Magnum in a leather pouch hidden in a hole in the garage ceiling. Although there were no fingerprints on the gun, the words "Coon" and "Jim" were scratched on the gun's handle. Coon told Officer Golembiewski he found the gun in a toolbox, thought it was a pellet gun, and hid it in the ceiling. Regarding the ammunition, Coon told Golembiewski he and his father, who has been dead more than 20 years, reloaded (meaning refilled) ammunition.
May 2006 Search
During the second search, police found more ammunition in Coon's garage and a gun clip with .357 Magnum rounds in his bedroom. As the search was taking place, he pulled into the driveway of the residence in his mother's sedan. Oceanside Police Sergeant Matthew Cole looked through the front passenger side window and saw Coon holding a blue pouch in his right hand. After Sergeant Cole ordered him to show his hands and get out of the car, *Page 262 
Coon tossed the pouch to the driver's side floorboard. Sergeant Cole retrieved the pouch, which contained 7.01 grams of methamphetamine. The pouch also contained a scale, nine empty plastic baggies, and $525 in cash.[2] In addition, the police found a bag containing numerous clean glass tubes in the trunk of the car. Coon denied knowledge of the pouch and told Officer Golembiewski he had been reaching for a drill in the back of the car. El Cajon Police Officer Paul Winslow, testifying as an expert in drug dealing, stated, in his opinion, the amount of drugs, coupled with the scale, the baggies, the glass tubes, and the cash, suggested the methamphetamine was intended for sale, rather than for personal use.
 II A*
In defense of the drug charges, Coon offered the testimony of Veronica De Hoyos and Karen Roman. They testified they had borrowed Coon's mother's car the day before the May 2006 search to drive their now deceased roommate, Twila Mae Crock, to the hospital for chemotherapy treatment. In addition, they testified the blue pouch belonged to Crock, who used it to carry drugs, including methamphetamine. They also testified Crock had lost the blue pouch the day they took her to the hospital. Roman further testified Crock supported herself with Social Security income, but would often buy large quantities of methamphetamine. Neither De Hoyos nor Roman knew why Crock carried a scale and plastic baggies in the pouch. Both testified that when they learned of Coon's arrest, they thought the drugs involved were Crock's. De Hoyos testified she did not come forward sooner because she was grappling with her own addiction. Roman testified she did not come forward sooner because she was grieving Crock's death.
In rebuttal, the prosecution moved to admit testimony showing Coon had possessed methamphetamine a few weeks before the trial. The prosecution argued the evidence was proper rebuttal because the testimony of De Hoyos and Roman tended to negate Coon's knowledge that the substance in the pouch was methamphetamine. The prosecution also explained it did not introduce the evidence in its case-in-chief because it did not know before trial that the defense was going to offer witnesses to show the pouch was not Coon's and because, "as the better part of restraint and fairness," it did not want to "dirty [Coon] up" in the prosecution's case-in-chief. The trial court granted the prosecution's motion, finding the evidence was proper rebuttal and its probative value outweighed any prejudicial impact.
El Cajon Police Officer Kevin Trotter subsequently testified he took Coon into custody on an unrelated matter. He directed another officer to search Coon and watched as the officer removed a small plastic baggie containing .66 grams of methamphetamine from Coon's right front coin pocket.
 1
Coon contends the trial court erred in admitting evidence of his uncharged possession of methamphetamine because it was not proper rebuttal evidence. We conclude this contention lacks merit.
The order of proof and the decision to admit rebuttal evidence rest within the sound discretion of the trial court. (Pen. Code, § 1094; Evid. Code, § 320; People v.Harris (2005) 37 Cal.4th 310, 335; People v.Coffman (2004) 34 Cal.4th 1, 68.) We will not disturb the trial court's decision on appeal absent palpable abuse. (People v. Wallace (2008) 44 Cal.4th 1032, 1088;People v. Young (2005) 34 Cal.4th 1149, 1199.) No such abuse occurred in this case.
Generally, after the parties in a criminal case have presented their respective cases in chief, they may only present rebuttal evidence if the trial court, for good reason and in furtherance of justice, permits them to do so. (Pen. Code, § 1093, subds. (c) (d).) The purpose of this restriction is "to assure an orderly presentation of evidence so that the trier of fact will not be confused; to prevent a party from unduly magnifying certain evidence by dramatically introducing it late in the trial; and to avoid any unfair surprise that may result when a party who thinks he has met his opponent's case is suddenly confronted at the end of trial with an additional piece of crucial evidence." (People v. Carter (1957)48 Cal.2d 737, 753.)
Proper rebuttal evidence is limited to evidence made necessary by the defendant's case because the defendant has introduced new evidence or made assertions not implicit in the defendant's denial of guilt. (People v. Carter, supra,48 Cal.2d at p. 753.) Evidence that is crucial to the prosecution's case and directly probative of the crimes charged is not proper rebuttal evidence. (Ibid.; People v. Pike (1962)58 Cal.2d 70, 92.) Conversely, impeachment evidence offered to counter a point disputed by the defendant is proper rebuttal evidence even if the evidence tends to support the prosecution's case-in-chief or tends to connect the defendant with crimes other than those for which he is on trial. (People v. Pike,supra, 58 Cal.2d at p. 92; see also People v. Coffman,supra, 34 Cal.4th at p. 68; People v. Harrison
(1963) 59 Cal.2d 622, 629.)
Here, the evidence of Coon's uncharged possession of methamphetamine might have been admissible in the prosecution's case-in-chief to prove the knowledge elements of the drug charges. (See Evid. Code, § 1101, subd. (b); People v.Thornton (2000) 85 Cal.App.4th 44, 47.) However, the evidence was not directly probative of the drug charges and, arguably, was not crucial to the prosecution's case. The prosecution had other evidence, including Sergeant Cole's observations and the scales and baggies found during the first search, to establish the drug charges. Nonetheless, we need not decide whether the trial court improperly admitted the evidence in rebuttal because Coon has not established prejudice. The defense evidence — that the pouch belonged to a deceased cancer patient who bought large quantities of drugs for personal use while living on Social Security and carried the drugs around with her without the typical paraphernalia needed to use them — was sufficiently weak and the prosecution's other evidence was sufficiently strong that a result more favorable to Coon was not reasonably probable absent admission of the evidence. (People v. Welch (1999) 20 Cal.4th 701,749-750; People v. Watson (1956) 46 Cal.2d 818, 836.) In view of our conclusion, we do not address Coon's argument that the prosecution did not have grounds to reopen and present the evidence in the prosecution's case-in-chief.
 2
Coon also contends the trial court erred by not excluding the evidence of his uncharged possession of methamphetamine because the probative value of this evidence was substantially outweighed by its prejudicial effect. We review trial court rulings on the admissibility of evidence for abuse of discretion. (People v. Guerra (2006) 37 Cal.4th 1067,1113, disapproved on another point in People v. Rundle
(2008) 43 Cal.4th 76, 151.) "Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (Ibid.) We conclude the trial court did not abuse its discretion.
A substantial prejudicial effect is inherent in uncharged offenses. Consequently, evidence of uncharged offenses is admissible only if it is of substantial probative value and the probative value is not substantially outweighed by the probability the admission of the evidence would create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (People v. Ewoldt (1994)7 Cal.4th 380, 404 (Ewoldt), superseded by statute on other grounds as stated by People v. Britt (2002)104 Cal.App.4th 500, 505; Evid. Code, § 352.) In this case, the probative value of Coon's uncharged possession of methamphetamine was substantial because it rebutted the testimony of De Hoyos and Roman by tending to show Coon knew the blue pouch was in his mother's car and that it contained methamphetamine. The probative value of the evidence was strengthened because the evidence came from a subsequent, independent investigation of Coon. (Ewoldt, supra,7 Cal.4th at pp. 404-405.) The inherent prejudicial effect of the evidence, including the possibility the jury might have wanted to punish Coon for the uncharged offense regardless of his guilt of the charged offenses, was diminished by the brevity of the testimony concerning it and the comparatively less inflammatory description of it.[3] (Id., at p. 405.) The inherent prejudicial effect was also diminished by the trial court's instruction to the jury explaining the limited purpose for which the jury could use the evidence. We presume the jury followed these instructions. (People v. Lindberg (2008)45 Cal.4th 1, 25-26.) Considering these circumstances, we conclude the trial court did not abuse its discretion in admitting evidence of Coon's uncharged possession of methamphetamine.
Even if the trial court had abused its discretion, reversal is not required. As we previously explained, the prosecution's other evidence was sufficiently strong and the defense evidence was sufficiently weak that a result more favorable to Coon was not reasonably probable absent admission of the evidence. (People v. Welch, supra, 20 Cal.4th at pp. 749-750;People v. Watson, supra, 46 Cal.2d at p. 836.)
 B
To prove the allegation Coon was on bail at the time he committed the crimes charged in counts 1, 2, 6, 9, and 10, the prosecutor presented and the trial court admitted into evidence copies of two minute orders and a 28-page case print fromPeople v. Coon (Super.Ct. Riverside County, 2005, No. SWF011097) (Riverside County case). The documents show Coon was out on bail in the Riverside County case when the acts underlying counts 1, 2, 6, 9, and 10 occurred.
The Riverside County Superior Court's seal is stamped on the documents next to a certificate stating, "Each document to which this certificate is attached is certified to be a full, true and correct copy of the original on file and of record in my office." The certificate is dated and signed by a deputy court clerk. Above the certificate is a notice stating, "This must be in red to be a `CERTIFIED COPY.'" Below the certificate is a similar notice.
Printed across the top of the documents is a transmit terminal identification header showing the documents were faxed to the prosecutor from the Riverside County Superior Court Clerk's Office. Because the documents were *Page 263 
faxed, the documents were not original certified copies of court records. Rather, the documents were copies of certified copies. Coon contends the trial court erred in admitting the documents because they were not original certified copies. We disagree.
A purported copy of a writing in the custody of a public entity, or of an entry in the writing, is prima facie evidence of the existence and content of the writing or entry if (1) the copy purports to be published by the authority of the public entity which keeps the writing; (2) the office in which the writing is kept is in the United States; and (3) the copy is attested or certified as a correct copy of the writing or entry by a public employee having legal custody of the writing. (Evid. Code, § 1530, subd. (a)(1), (2).) A copy of a certified copy of an official record is admissible unless there is a genuine question as to the authenticity or contents of the original, or it would be unfair to admit the copy in lieu of the original. (People v. Atkins (1989) 210 Cal.App.3d 47,55 [258 Cal.Rptr. 113] (Atkins); Evid. Code, § 1521.)
In Atkins, to prove the defendant had served a prior prison term for receiving stolen property, the prosecution introduced copies of prison records and a copy of a certification from the custodian of records stating the copies of the prison records were from prison files. (Atkins,supra, 210 Cal.App.3d at p. 53.) Defense counsel objected to the admission of the records because the certification was a copy. The trial court overruled the objection and admitted the documents, finding them to be authentic. (Ibid.)
On appeal, the defendant argued admission of the evidence violated the best evidence rule, which requires admission of the original of a writing to prove the content of the writing. (Atkins, supra, 210 Cal.App.3d at p. 54.) The appellate court rejected the defendant's argument, concluding the copy of the certification fell within an exception to the best evidence rule that permits the admission of a copy in lieu of an original unless a genuine question is raised as to the authenticity of the original, or it would be unfair to admit the copy in lieu of the original. (Id. at p. 55.)
The exception referred to by the Atkins court has been replaced with the secondary evidence rule. (Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid. Code (2009 supp.) foll. § 1521, p. 127.) Under the secondary evidence rule, the content of a writing may be proved by otherwise admissible secondary evidence unless there is a genuine dispute concerning the material terms of the writing and justice requires exclusion of the secondary evidence, or admission of the secondary evidence would be unfair. (Evid. Code, § 1521, subd. (a).)
Here, there is no genuine dispute concerning the material facts contained in the documents provided by the Riverside County Superior Court. Coon's trial *Page 264 
counsel in this case also represented Coon in the Riverside County case. Had there been any material inaccuracies or discrepancies in the documents, defense counsel was in a position to identify them and call them to the trial court's attention. He did not do so. Defense counsel on appeal also has not identified any material inaccuracies or discrepancies in the documents.
Nonetheless, the secondary evidence rule differs from the rule applied in Atkins in that the secondary evidence rule does not obviate the requirement for a writing to be authenticated before it is admitted into evidence. (Evid. Code, §§ 1401, subd. (b), 1521, subd. (c).) However, just as there is no genuine dispute in this case as to material contents of the documents, there is no genuine dispute as to their authenticity.
Authentication of a writing requires introduction of sufficient evidence for a trier of fact to find the writing is what the proponent claims it to be, or proof by other means, such as a stipulation, an admission, or a presumption, that the writing is what the proponent claims it to be. (Evid. Code, § 1400.) The means of authenticating a writing are not limited to those specified in the Evidence Code. (Id., § 1410.) A writing can be authenticated by circumstantial evidence and by its contents. (People v. Gibson (2001)90 Cal.App.4th 371, 383 [108 Cal.Rptr.2d 809]; Young v. Sorenson
(1975) 47 Cal.App.3d 911, 915 [121 Cal.Rptr. 236].) Both the transmit terminal identification header and the contents of the documents support a determination the documents were, in fact, records from the Riverside County case file.
Coon's reliance on the Massachusetts Supreme Court's decision in Commonwealth v. Deramo (2002) 436 Mass. 40
[762 N.E.2d 815] (Deramo) is misplaced for two reasons. First, in Deramo, there were material discrepancies between the original and the copies of the certified copies at issue. (Id., 762 N.E.2d at pp. 820, 821-822.) Second, the Deramo court never considered whether the copies of the certified copies were admissible under a rule like the secondary evidence rule. In fact, there is no indication fromDeramo that the Commonwealth of Massachusetts even has a rule like the secondary evidence rule.
Since the documents faxed from the Riverside County case were admissible under the secondary evidence rule and there was sufficient evidence to authenticate them, we conclude the trial court did not err in admitting them into evidence in the trial of the on-bail allegations for counts 1, 2, 6, 9, and 10. In view of our conclusion, we do not address Coon's argument that the admission of the evidence was prejudicial. *Page 265 
 DISPOSITION
The judgment is affirmed.
Haller, J., and Aaron, J., concurred.
[1] The jury acquitted Coon of two additional counts of receiving a stolen vehicle (Pen. Code, § 496d; counts 4 8). In addition, the trial court granted Coon's motion under Penal Code section 1118.1 for a judgment of acquittal for three counts of unlawful taking and driving of a vehicle (Veh. Code, § 10851, subd. (a); counts 3, 5 7).
[2] During the first search, police found some scales, more than 100 small baggies, a calculator, and a spoon with some residue on it inside a toolbox in the garage.
* See footnote, ante, page 258.
[3] Consistent with the trial court's direction to get "to the point," Officer Trotter's testimony, including preliminary matters and cross-examination, spanned less than seven pages of transcript. *Page 266